IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEWEL WIGGINTON, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 1:18-cv-00212-GMS |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | |
| ADVANCE AUTO PARTS, INC. et al., | ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM OF LAW IN SUPPORT OF TEAMSTERS LOCAL 710 PENSION FUND'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL

FRIEDLANDER & GORRIS, P.A.
JEFFREY M. GORRIS (Bar No. 5012)
CHRISTOPHER P. QUINN (Bar No. 5823)
1201 N. Market Street, Suite 2200
Wilmington, DE  19801
Telephone:  302/573-3500
302/573-3501 (fax)
jgorris@friedlandergorris.com
cquinn@friedlandergorris.com

Liaison Counsel for Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com

[Proposed] Lead Counsel for Plaintiff

**APRIL 9, 2018**

## I.      PRELIMINARY STATEMENT

Presently pending in this District is a securities class action lawsuit on behalf of Advance Auto Parts, Inc. ("Advance Auto" or the "Company") stockholders during the November 14, 2016 through August 15, 2017 Class Period alleging violations of the Securities Exchange Act of 1934 ("1934 Act") against defendants.  Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).  Teamsters Local 710 Pension Fund (the "Pension Fund") should be appointed as lead plaintiff because it: (1) timely filed this Motion; (2) has the largest financial interest in the outcome of this litigation; and (3) will typically and adequately represent the class's interests.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the Pension Fund's selection of Robbins Geller Rudman & Dowd LLP as lead counsel should be approved.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.     STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

This case is a putative class action alleging violations of the 1934 Act.  The case is in its procedural infancy due to the PSLRA's lead plaintiff and stay provisions.  *See* 15 U.S.C. §78u-4(a) & (b).  Once a lead plaintiff is appointed, the Court-appointed lead plaintiff will likely file an amended complaint, followed by defendants' responsive pleading (most likely a motion to dismiss) and briefing on the anticipated Rule 12(b)(6) motion.  Pursuant to the PSLRA, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." *See* 15 U.S.C. §78u-4(b)(3)(B).  The Court entered a stipulated Order extending defendants' time to respond to the operative complaint on March 5, 2018. *See* D.I. 7.

## III.    SUMMARY OF ARGUMENT

1.      The PSLRA requires district courts to appoint the most adequate plaintiff as lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(i).  The Pension Fund respectfully submits that it should be appointed as lead plaintiff because: (1) it timely filed a motion; (2) it, to its counsel's knowledge, has the largest financial interest in the relief sought by the class; and (3) it will fairly and adequately represent the interests of the class.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).

2.      The PSLRA also provides that "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. §78u-4(a)(3)(B)(v).   The Pension Fund has selected Robbins Geller as lead counsel and respectfully requests that the Court approve that choice.

## IV.    STATEMENT OF FACTS

Advance Auto is a leading North American automotive aftermarket parts provider that serves professional installers, independently owned operators, and "do-it-yourself" retail customers.  The Company's stores sell original equipment manufacturer and private label automotive replacement parts, accessories, batteries, and maintenance items for automotive vehicles.  Advance Auto shares trade on the New York Stock Exchange under the ticker symbol AAP.

On January 2, 2014, Advance Auto announced it had completed the acquisition of General Parts International, Inc.  According to Advance Auto's press release announcing the closing of the acquisition, General Parts was "a leading privately-held distributor and supplier of original equipment and aftermarket replacement products for commercial markets operating under the CARQUEST and WORLDPAC brands."  D.I. 1 at ¶21.  Through the acquisition of General Parts, Advance Auto added to its operations 38 General Parts

- 2 -

distribution centers, 1,248 company operated CARQUEST locations across the US and Canada, and the servicing of approximately 1,400 independently owned CARQUEST locations primarily in the U.S. and Canada.   Additionally, Advance Auto added WORLDPAC, a leading importer and distributor of original equipment and quality aftermarket replacement automotive parts to import specialists in North America and Puerto Rico operating 105 facilities across the U.S. and Canada, as part of the acquisition.

The Complaint alleges that defendants made materially false and misleading statements and/or concealed the following material information during the Class Period, including that:

- Integration issues surrounding the Company's CARQUEST acquisition resulted in systemic inefficiencies and cannibalization of sales;

- Increased competition was negatively impacting sales and revenue; and

- As a result, defendants' positive statements about Advance Auto's business and financial results were false and misleading and/or lacked a reasonable basis.

On May 24, 2017, Advance Auto issued a press release reporting disappointing first quarter 2017 financial and operating results, including a quarterly sales decrease of 3%, quarterly comparable store sales decline of 2.7%, and quarterly decrease in gross profit, "primarily driven by investments in the customer, inventory optimization efforts and supply chain expense deleverage due to the comparable store sales decline." D.I. 1 at ¶3.  As a result of this news, the price of the Company's stock declined 5%.

On August 15, 2017, Advance Auto issued a press release reporting disappointing second quarter fiscal 2017 financial and operating results and disclosed that "[c]omparable store sales for the quarter were flat." D.I. 1 at ¶40.  Further, with respect to Advance Auto's full year fiscal 2017 financial and operating guidance, the Company decreased its

comparable store sales guidance from 0%-2% growth to a 3%-1% decline, decreased its adjusted operating income rate guidance from a 15-35 basis point year-over-year improvement to a 200-300 basis point year-over-year reduction, decreased its free cash flow guidance by $100 million and increased its "integration and transformation" guidance from approximately $30-$35 million to approximately $100-$150 million. *Id.* at ¶4. Thereafter, the Company hosted an earnings conference call with investors and the media, during which the Company's CEO, defendant Thomas R. Greco, stated in part:

> We're still in the early phases of our turnaround. And as noted before, the historic lack of investment in the customer needed to be rectified. We lacked a coherent strategy. Our frontline turnover was unacceptable. Our technology platforms were segregated and difficult to navigate, and our supply chain infrastructure was duplicative and siloed. All of these created a suboptimal experience for both customers and team members and was the primary reason our top line underperformed versus our competitive set by a wide margin for years. Simply put, we were an easy share donor for our competitors.

*     *     *

> You saw our fiscal 2017 guidance revision in our press release today. Our revised full year guidance ranges from down 3% sales comp on the low end to down 1% comp on the high end. With regard to sales, there's little doubt the industry experienced a short-term drag on sales in the first half of 2017. This has been widely reported in both public company releases and syndicated data. While we don't think the softness is indicative of a longer-term trend, we do believe it's now prudent for us to plan for this softer industry backdrop to persist into the second half of 2017.

> As a result, we're moderating our growth expectations for 2017, as we do not believe we'll offset the first half sales softness in the back half nor do we believe industry growth rates will snap back to historical levels in half two.

> We attribute the temporary industry softness to three primary factors. First, economic uncertainty for low-income consumers. The most measurable dimension here is the year-over-year increase in gas prices, which has led to a lower increase in miles driven in 2017 versus prior year relative to the increases we saw in both 2015 and 2016.

> Second, a temporary trough in vehicles in the age and maintenance sweet spot, resulting from a substantial decline in new car sales in the 2008-

2009 recession. Eventually, this reverses as new car sales accelerated double digits for three straight years starting in 2010 and experienced strong mid-single digit growth for the succeeding years after that. As a result, we expect meaningful improvement for industry growth in the future.

*Id.* at ¶43.  Additionally, the Company's CFO, defendant Thomas Okray, noted during the conference call:

> Given that half of the year is behind us and considering both current industry sales environment as well as the ramp time of actions we are taking to flow through to the P&L, we believe it is now prudent to revise our 2017 guidance.  Considering our first half comp performance, as well as the outlook we have for overall industry growth in the back half, we have revised our full year comp expectations to now be between down 3% and down 1%.

> Turning to operating profit. We have revised our adjusted OI margin expectations to be between 200 bps and 300 bps decrease versus prior year. The primary driver of the change is the leverage of fixed costs associated with the lower comp expectations. Also, contributing to the change is a 75 bps headwind related to non-cash expenses from reducing our inventory significantly more than we planned at the beginning of the year. Excluding the impact of the non-cash expenses from inventory reduction, the adjusted operating income margin expectation would be a 125 bps to 225 bps decrease versus prior year.

*Id.* at ¶44.  As a result of this news, the Company's stock declined 20% to close at $87.08 per share on August 15, 2017.

## V.   ARGUMENT

### A.   The Pension Fund Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i).  First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint.  15 U.S.C. §78u-4(a)(3)(A)(i).  Next, the PSLRA provides that the Court

shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

> (aa) has either filed the complaint or made a motion in response to a notice …;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).  The Pension Fund meets each of these requirements and should be appointed Lead Plaintiff.

### 1.      This Motion Is Timely

The statutory notice published in the action on February 6, 2018, advised putative class members of the action's pendency, the claims asserted, the proposed class, and the right to move the Court to be appointed as lead plaintiff by April 9, 2018.  *See* Affidavit of Christopher P. Quinn in Support of Teamsters Local 710 Pension Fund's Motion for Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel ("Quinn Aff."), Ex. A (attached as Tab 1 to the Appendix in Support of Teamsters Local 710 Pension Fund's Motion for Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel, filed concurrently herewith).  Because this Motion is being filed by the statutory deadline, it is timely and the Pension Fund is entitled to be considered for appointment as lead plaintiff.

### 2.      The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

As evidenced by its Certification, the Pension Fund purchased 8,122 shares of Advance Auto stock during the Class Period and suffered more than $564,000 in losses due

{FG-W0436883.}

to defendants' alleged misconduct.  *See* Quinn Aff., Exs. B-C.  To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest.  Therefore, the Pension Fund satisfies the PSLRA's largest financial interest requirement.

### 3.   The Pension Fund Is Typical and Adequate of the Putative Class

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(3)-(4); *Cendant*, 264 F.3d at 263-64 (focusing on typicality and adequacy at the lead plaintiff stage).

"[I]n inquiring whether the movant has preliminarily satisfied the typicality requirement, [courts] should consider whether the circumstances of the movant with the largest losses 'are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based.'"  *Id.* at 265 (alterations in original and citations omitted).  "In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it 'has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'"  *Id.* (alterations in original and citations omitted).

Like all class members, the Pension Fund acquired Advance Auto stock during the Class Period and suffered harm as a result of defendants' alleged misconduct.  As such, the Pension Fund suffered the same injuries as the other putative class members as a result of the

Case 1:18-cv-00212-GMS   Document 13   Filed 04/09/18   Page 9 of 10 PageID #: 130
same alleged conduct by defendants and has claims based on the same legal issues. In addition, the Pension Fund has submitted a Certification confirming its willingness and ability to serve as lead plaintiff. *See* Quinn Aff., Ex. B. Its substantial financial interest indicates the Pension Fund has the requisite incentive to vigorously represent the class's claims. Moreover, as an institutional investor with prior experience serving as lead plaintiff, the Pension Fund will vigorously prosecute this action with the assistance of its qualified counsel (as discussed in §V.B below). Finally, the Pension Fund is not subject to unique defenses and is not aware of any conflicts between its claims and those asserted by the class.

Accordingly, the Court should find that the Pension Fund has made a *prima facie* showing of typicality and adequacy.

### B.     The Court Should Approve the Pension Fund's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to protect the interests of the class. *Cendant*, 264 F.3d at 273-74. The Pension Fund has selected Robbins Geller as lead counsel in this case.

Robbins Geller, a 200-attorney firm with offices nationwide, regularly practices complex securities litigation. *See* Quinn Aff., Ex. D. District courts throughout the country have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases. *See id.*; *see also* Quinn Aff., Ex. E (*Borrego v. Ruckus Wireless, Inc.*, No. 1:16-cv-00340-SLR, Order Granting Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel (D. Del. Aug. 24, 2016) (appointing Robbins Geller lead counsel)).

- 8 -

The Pension Fund's counsel is competent, experienced, and qualified to represent the putative class.  Accordingly, Robbins Geller should be appointed as Lead Counsel.

## VI.   CONCLUSION

The Pension Fund has satisfied each of the PSLRA's requirements for appointment as lead plaintiff.  As such, the Pension Fund respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of Robbins Geller as Lead Counsel.

DATED:  April 9, 2018                          Respectfully submitted,

FRIEDLANDER & GORRIS, P.A.
JEFFREY M. GORRIS (Bar No. 5012)
CHRISTOPHER P. QUINN (Bar No. 5823)


                                              */s/ Christopher P. Quinn*
                                              CHRISTOPHER P. QUINN

                                              1201 N. Market Street, Suite 2200
                                              Wilmington, DE  19801
                                              Telephone:  302/573-3500
                                              302/573-3501 (fax)
                                              jgorris@friedlandergorris.com
                                              cquinn@friedlandergorris.com

                                              Liaison Counsel

                                              ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                              DANIELLE S. MYERS
                                              655 West Broadway, Suite 1900
                                              San Diego, CA  92101-8498
                                              Telephone:  619/231-1058
                                              619/231-7423 (fax)
                                              dmyers@rgrdlaw.com

                                              [Proposed] Lead Counsel for Plaintiff

- 9 -