IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JEWEL WIGGINTON, Individually and on )
Behalf of All Others Similarly Situated, )
                                                        )
               Plaintiffs, )
                                                          )
        v.                                 )    C.A. No. 18-212 (MN)

ADVANCE AUTO PARTS, INC.,
THOMAS R. GRECO and THOMAS
OKRAY,

               Defendants.

**<u>MEMORANDUM OPINION</u>**

Brian E. Farnan, Michael J. Farnan, Farnan LLP, Wilmington, DE; Phillip Kim, The Rosen Law Firm, P.A., New York, NY – Attorneys for Plaintiff Jewel Wigginton

Peter B. Andrews, Craig J. Springer, David M. Sborz, Andrews & Springer LLC, Wilmington, DE; Ira M. Press, David A. Bishop, Thomas E. Elrod, Kirby McInerney LLP, New York, NY – Attorneys for Local 338 RWDSU/UFCW Retirement Fund

Jeffrey M. Gorris, Christopher P. Quinn, Friedlander & Gorris, P.A., Wilmington, DE; Danielle S. Myers, Robbins, Geller, Rudman & Dowd LLP, San Diego, CA – Attorneys for Teamsters Local 710 Pension Fund

P. Bradford deLeeuw, Rosenthal, Monhait & Goddess, P.A.; Naumon A. Amjed, Darren J. Check, Ryan T. Degnan, Kessler Topaz Meltzer & Check, LLP, Radnor, PA – Attorneys for The Public Employees' Retirement System of Mississippi

Samuel A. Nolen, Katharine L. Mowrey, Richards Layton & Finger, P.A.; Douglas P. Baumstein, Susan L. Grace, White & Case LLP, New York, NY – Attorneys for Defendants

November 2, 2018

*[signature]*

NOREIKA, U.S. DISTRICT JUDGE:

Presently before the Court are competing motions by (1) Teamsters Local 710 Pension Fund ("Teamsters 710") (D.I. 12), (2) Local 338 RWDSU/UFCW Retirement Fund ("Local 338") (D.I. 15), and (3) the Public Employees' Retirement System of Mississippi ("Mississippi PERS") (D.I. 16), each seeking an order from the Court appointing the moving party as Lead Plaintiff in the present action, as well as an order approving that party's selection of Lead Counsel.[1] For the reasons set forth below, the Court GRANTS Mississippi PERS's motion (D.I. 16) and DENIES Teamsters 710's motion (D.I. 12) and Local 338's motion (D.I. 15).

## I. BACKGROUND

On February 6, 2018, Plaintiff Jewel Wigginton ("Plaintiff") filed the present action against Advance Auto Parts, Inc. ("Advance Auto" or "the Company"), its CEO Thomas Greco, and its CFO Thomas Okray (collectively, "Defendants") on behalf of all purchasers of Advance Auto securities between November 14, 2016 and August 15, 2017 ("the Class Period"). (D.I. 1 ¶ 1). The Complaint asserts claims against Defendants arising under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act") (found at 15 U.S.C. §§ 78j(b) and 78t(a)), as well as under Securities and Exchange Commission ("SEC") Rule 10b-5. (D.I. 1 ¶¶ 7–8).

Advance Auto provides aftermarket automotive parts in North America. (D.I. 1 ¶ 20). Serving "professional installers, independently-owned operators, and 'do-it-yourself' retail customers," Advance Auto sells items such as original equipment manufacturer parts, private label replacement parts, and other accessories and maintenance items for automotive vehicles. (*Id.*) Plaintiff alleges that she and all other purchasers of Advance Auto securities suffered damages

---

[1] Local 338 and Mississippi PERS also request approval of their appointment of Liaison Counsel. (*See, e.g.*, D.I. 15 (Local 338); D.I. 16 (Mississippi PERS)).

1

arising out of Defendants' failure to disclose "material adverse facts" about Advance Auto's "financial well-being, business relationships, and prospects" throughout the Class Period. (D.I. 1 ¶ 5). Specifically, Plaintiff alleges that, during the Class Period, Defendants failed to disclose that Advance Auto's acquisition of the Carquest brand, as well as increased competition, were negatively affecting Advance Auto's sales. (*Id.* ¶ 32). According to Plaintiff, Advance Auto securities traded at artificially inflated prices during the Class Period because of Defendants' misleading statements and withholding of information. (*Id.* ¶¶ 11, 59). Plaintiff claims that once the allegedly concealed information became public, the price of Advance Auto securities "significantly declined," which caused Plaintiff and other purported class members to suffer economic loss. (*Id.* ¶ 53).

On the same day that Plaintiff filed the Complaint, Plaintiff's counsel published notice of this purported class action with Business Wire, which informed potential class members that they could seek appointment as Lead Plaintiff until April 9, 2018. (*See, e.g.,* D.I. 20, Ex. C). On April 9, 2018, Teamsters 710, Local 338, and Mississippi PERS each filed a motion for appointment as Lead Plaintiff in the present action, as well as for approval of their selection of counsel for the class action. (*See* D.I. 12 (Teamsters 710's motion); D.I. 15 (Local 338's motion); D.I. 16 (Mississippi PERS's motion)). Teamsters 710 is a pension fund that purchased 8,122 shares of Advance Auto securities during the Class Period. (D.I. 13 at 6). Local 338 is a retirement fund that purchased 10,435 shares of Advance Auto securities during the Class Period. (D.I. 19 at 5). And Mississippi PERS is a retirement system that purchased 31,102 shares of Advance Auto securities during the Class Period. (D.I. 20, Ex. B). Each party filed oppositions to the other two competing motions (*see* D.I. 32–36), as well as a reply (*see* D.I. 37–41), and all three motions were fully briefed as of April 30, 2018.

## II. LEGAL STANDARDS

This case arises under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The PSLRA provides that, in any private action arising under the Exchange Act brought as a class action, the Court shall consider any motion made by a purported class member and shall appoint as lead plaintiff[2] the member or members determined to be the "most capable of adequately representing the interests of class members" – *i.e.*, the "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). The Court must follow a two-step process for determining the most adequate plaintiff for the class action. *See OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 399 (D. Del. 2014). First, the Court must identify the person or group of persons entitled to the statutory presumption of most adequate plaintiff. *Id.* Second, the Court must determine whether that presumption has been rebutted. *Id.*

The PSLRA provides that the presumptive lead plaintiff is the person or group that: (1) either filed the complaint or made a timely motion for appointment as lead plaintiff, (2) has the largest financial interest in the relief sought in the class action, and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Once the Court identifies the movant with the largest financial interest, it must independently determine whether the movant satisfies the typicality and adequacy requirements of Rule 23. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) (the "otherwise satisfies" language refers

---

[2] The PSLRA provides that the Court shall appoint a lead plaintiff within 90 days of notice of the pending class action being published. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). Where, as here, the parties dispute who should serve as lead plaintiff, the Court may not be able to accomplish that within the statutory timeframe. Although the 90-day period has elapsed in the present case, the Court retains the authority to appoint a lead plaintiff. *See, e.g., Vandevelde v. China Nat. Gas, Inc.*, No. 10-728-SLR, 2011 WL 2580676, at *3 n.6 (D. Del. June 29, 2011); *Raftery v. Mercury Fin. Co.*, No. 97 C 624, 1997 WL 529553, at *1 (N.D. Ill. Aug. 15, 1997).

3

to the typicality requirements of Rule 23(a)(3) and adequacy requirements of Rule 23(a)(4)). If the Court finds that a movant satisfies these requirements, that person or group is presumptively the most adequate plaintiff to represent the class. This presumption may be rebutted "only upon proof" by a purported class member that the plaintiff "will not fairly and adequately protect the interests of the class" or that the plaintiff is "subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) & (bb).

Once the Court has determined the most adequate plaintiff to represent the purported class, that plaintiff, now the lead plaintiff, then, subject to the Court's approval, selects and retains counsel to represent the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The selection of a lead plaintiff and the approval of lead plaintiff's choice of counsel are both committed to the discretion of the Court. *See Vandevelde v. China Nat. Gas, Inc.*, 277 F.R.D. 126, 131 (D. Del. 2011).

### III. DISCUSSION

The Court first addresses which of the competing movants – Local 338, Teamsters 710, or Mississippi PERS – is entitled to the presumption of most adequate plaintiff in the present action. The Court then turns to whether the remaining movants have rebutted that presumption, and finally to whether to approve of lead plaintiff's selection of counsel.

#### A. Presumptive Lead Plaintiff

The presumptive lead plaintiff is the person or group that satisfies the requirements set forth in the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The threshold determination of which person or group is the presumptive lead plaintiff "should be a product of the court's independent judgment." *In re Cendant*, 264 F.3d at 263; *see also OFI Risk Arbitrages*, 63 F. Supp. 3d at 399. That is, the Court must independently evaluate whether the movant: (1) filed the complaint or timely moved, (2) has the largest financial interest in the requested relief, and (3) otherwise

satisfies the requirements of Rule 23. Any arguments as to why that person or group should not serve as lead plaintiff may only be considered in determining whether the statutory presumption has been rebutted. *See In re Cendant*, 264 F.3d at 263.

### 1. Motion for Appointment as Lead Plaintiff

The PSLRA requires that any motion to serve as lead plaintiff be made within 60 days after notice of the class action has been published. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). Local 338, Teamsters 710 and Mississippi PERS each filed a motion for appointment as Lead Plaintiff in the present action within 60 days of the notice regarding this action being published in Business Wire. (*See, e.g.*, D.I. 12 (Teamsters 710's motion); D.I. 15 (Local 338's motion); D.I. 16 (Mississippi PERS's motion); D.I. 20, Ex. C (Business Wire publication of proposed class action against Advance Auto)). Thus, the three parties have complied with this procedural requirement of the PSLRA, and any one of them could be the presumptive lead plaintiff in this action.

### 2. Largest Financial Interest

The Court must next determine which movant has the largest financial interest in the relief sought by the purported class action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). In making this determination, the Court "should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *In re Cendant*, 264 F.3d at 262. "Courts in this Circuit have afforded the third factor the most weight." *Soto v. Hensler*, 235 F. Supp. 3d 607, 615 (D. Del. 2017).

Here, the Court finds that Mississippi PERS suffered the largest approximate loss out of the competing movants. Using the Last-In-First-Out ("LIFO") method to calculate losses,[3] Mississippi PERS claims losses estimated at more than $2.1 million. (*See* D.I. 20, Ex. B). In contrast, Teamsters 710 has losses estimated at just under $540,000 (*see* D.I. 37 at 1), and Local 338 claims losses at approximately $460,000. (*See* D.I. 23, Ex. 3 at 3).

Analysis of the other two *Cendant* factors also supports the conclusion that Mississippi PERS has the largest financial interest here. Mississippi PERS purchased 31,102 shares during the Class Period, whereas Teamsters 710 and Local 338 purchased 8,122 and 10,435 shares, respectively. (*See* D.I. 20, Ex. B (Mississippi PERS total shares); D.I. 13 at 6 (Teamsters 710's total shares); D.I. 19 at 5 (Local 338's total shares)). Similarly, Mississippi PERS claims net expenditures in excess of $4.5 million during the Class Period (D.I. 39 at 5), while Teamsters 710 claims just over $1.3 million (D.I. 14, Ex. C) and Local 338 claims over $1.4 million in net expenditures (D.I. 32 at 7) during the Class Period. Therefore, under any of the *Cendant* factors, the Court finds that Mississippi PERS has the largest financial stake in the relief sought by this action.[4]

---

[3] The Court is mindful that there are different methods for approximating a movant's loss – *e.g.*, LIFO, First-In-First-Out ("FIFO"), the *Dura* method. The movants, however, largely focus on LIFO losses in their briefing, and the Court is only in possession of a complete dataset of losses for each party based on the LIFO method. Moreover, the LIFO method is widely accepted for approximating movant losses and, in many cases, can be a more accurate method for doing so. *See, e.g., Bo Young Cha v. Kinross Gold Corp.*, No. 12 CIV. 1203 PAE, 2012 WL 2025850, at *3–4 (S.D.N.Y. May 31, 2012).

[4] The Court has independently determined that Mississippi PERS has the largest financial interest in the relief sought by this action, and neither Teamsters 710 nor Local 338 disputes that Mississippi PERS is the movant with the largest financial interest. (*See, e.g.*, D.I. 37 at 1 ("As compared to Mississippi Public Employees Retirement System ("MissPERS"), [Teamsters 710] concedes MissPERS suffered a greater loss . . . ."); D.I. 32 at 6 ("Local 338 has the largest financial interest of the remaining movants, excluding Mississippi PERS . . . .")).

### 3. Typicality and Adequacy Requirements of Rule 23

Finally, the Court must determine whether the movant with the largest financial interest – *i.e.*, Mississippi PERS – satisfies the typicality and adequacy requirements of Rule 23 such that it is entitled to the presumption of most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). At this stage, the Court's inquiry "need not be extensive" and should only consider whether the movant has stated a *prima facie* case of typicality and adequacy under Rule 23. *In re Cendant*, 264 F.3d at 264; *see also id.* at 264–65 ("When making these determinations, courts should apply traditional Rule 23 principles.")

As to typicality under Rule 23, the Court must determine whether Mississippi PERS's circumstances or legal theories are "markedly different" than those of the proposed class. *In re Cendant*, 264 F.3d at 265. The Complaint alleges that the proposed class members suffered economic loss arising out of Advance Auto's misleading statements and deliberate concealment of negative information regarding its sales outlook, which caused class members to purchase Advance Auto securities at an artificially inflated rate. (*See, e.g.*, D.I. 1 ¶¶ 5, 11, 32, 53, 59). Mississippi PERS asserts the same claims against Defendants: "Mississippi PERS seeks recovery for losses incurred as a result of Defendants' misrepresentations and omissions that resulted in subsequent declines in the price of Advance Auto securities." (D.I. 17 at 7–8; *see also* D.I. 35 at 7 ("Like all other class members, Mississippi PERS: (1) purchased Advance Auto securities during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) was damaged thereby.")). Mississippi PERS's claims thus appear to be based on the same conduct and legal theories as the proposed class claims. The Court therefore finds that Mississippi PERS has made a *prima facie* showing that it satisfies the typicality requirement of Rule 23.

As to adequacy under Rule 23, the Court must determine whether Mississippi PERS possesses the "ability and incentive" to represent the class "vigorously," whether it has retained adequate counsel to represent the entire class, and whether there are conflicts between Mississippi PERS's claims and the claims of the proposed class. *In re Cendant*, 264 F.3d at 265. Whether Mississippi PERS has obtained adequate counsel depends, in part, on whether "[its] selected counsel is competent, and the retainer agreement is reasonable." *OFI Risk Arbitrages*, 63 F. Supp. 3d at 401.

The Court finds that Mississippi PERS has demonstrated that it has the requisite abilities and incentives to pursue the claims on behalf of the class vigorously. As an initial matter, Mississippi PERS has the largest financial interest in the relief sought by this action and, because of its significant losses, has a clear incentive to pursue the present claims against Defendants vigorously. Moreover, Mississippi PERS is an institutional investor that has been involved – and served as lead plaintiff – in a number of class actions involving allegations of securities fraud such as here. (*See* D.I. 17 at 9; *see also* D.I. 39 at 3–4). That lead-plaintiff work has purportedly resulted in the recovery of more than $3.5 billion dollars for investors. (*See* D.I. 41, Ex. B at ¶ 8). Mississippi PERS also has access to significant resources to manage the present litigation, including a number of dedicated special assistant attorneys general and other attorneys to assist in prosecuting the present claims against Defendants. (*See* D.I. 41, Ex. B. at ¶¶ 5–9). Perhaps because of experience and access to resources, the PSLRA prefers institutional investors like Mississippi PERS serving as lead plaintiffs. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (noting PSLRA's preference for institutional investors as lead plaintiffs); *see also In re Cendant*, 264 F.3d at 273 ("[T]he purpose of the [PSLRA] was to encourage institutional

investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members.").

Additionally, Mississippi PERS also appears to have retained adequate counsel to represent the entire class. As discussed below, Mississippi PERS has selected competent counsel with extensive experience and sizeable recoveries in securities fraud class actions such as this one. (*See infra* § III.C). Finally, there is no evidence of any conflicts between Mississippi PERS's claims and those of the proposed class. Therefore, the Court finds that Mississippi PERS has made a *prima facie* showing that it satisfies the adequacy requirement of Rule 23.

Because Mississippi PERS has the largest financial interest in the relief sought by the proposed class action, and because Mississippi PERS otherwise satisfies the requirements of Rule 23, it is entitled to the PSLRA's presumption of Lead Plaintiff in the present action.

### B. Rebuttals Offered by Local 338 and Teamsters 710

The Court now turns to whether either Local 338 or Teamsters 710 has rebutted the presumption that Mississippi PERS is the most adequate plaintiff here. "[T]he PSLRA requires 'actual proof' that the presumptive lead plaintiffs are inadequate representatives of the class or subject to unique defenses." *OFI Risk Arbitrages*, 63 F. Supp. 3d at 402; *see also id.* ("The Third Circuit has stressed that the PSRLA requires more than mere assertions in order to rebut the presumptive lead plaintiffs' status.").

Local 338 and Teamsters 710 argue that Mississippi PERS should be barred from serving as Lead Plaintiff because it has served as a lead plaintiff more than five times in the last three years, purportedly in contravention of the PSLRA's rule against professional plaintiffs ("the 5-in-3 Rule"). The PSLRA provides:

> Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an

9

> officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

15 U.S.C. § 78u-4(a)(3)(B)(vi). Both Local 338 and Teamsters 710 correctly point out that Mississippi PERS has served or is currently serving as lead plaintiff in at least seven securities class actions in the last three years. (*See, e.g.*, D.I. 32 at 3; D.I. 34 at 1; *see also* D.I. 20, Ex. A at ¶ 5 (Mississippi PERS certification listing lead-plaintiff role in seven cases in last three years)). Local 338 and Teamsters 710 argue that Mississippi PERS has therefore violated the 5-in-3 Rule and should be automatically barred from serving as Lead Plaintiff here.

As an initial matter, the Court finds that Mississippi PERS's status as a lead plaintiff in seven other class actions within the last three years does not automatically disqualify it from serving as Lead Plaintiff here. That there is a ***preference*** for institutional investors to serve as lead plaintiffs under the PSLRA necessarily suggests that institutional investors are likely not the intended targets of the 5-in-3 Rule. *See, e.g.*, *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 299 (D. Del. 2003) (5-in-3 Rule does not bar institutional investor from serving as lead plaintiff, especially in light of Congressional intent to encourage institutional plaintiffs to serve as the representative party) (citing H.R. REP. 104-369, at 35 (Conf. Rep. 1995) ("Institutional investors seeking to serve as lead plaintiff may need to exceed this [5-in-3] limitation and do not represent the type of professional plaintiff this legislation seeks to restrict.")); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 640 (D.N.J. 2002) (reviewing cases addressing whether the 5-in-3 Rule applies to institutional investors and declining to find an automatic bar). Moreover, the statute itself provides the Court with discretion in applying the 5-in-3 Rule to disqualify prospective lead plaintiffs. *See* 15 U.S.C. § 78u-4(a)(3)(B)(vi) ("***Except as the court may otherwise permit*** . . . a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought . . . during any 3-year period."

(emphasis added)). Therefore, the Court finds that Mississippi PERS is not automatically barred from serving as Lead Plaintiff in the present case simply because of its lead-plaintiff work in seven other securities class actions in the last three years.

Additionally, both Local 338 and Teamsters 710 fail to offer any "actual proof" of why Mississippi PERS's status as lead plaintiff in seven cases in the last three years *should* bar it from serving as Lead Plaintiff here. There is no evidence that Mississippi PERS ever failed to pursue the class claims in any of those other cases vigorously, nor is there any evidence that multiple pending actions have put a strain on Mississippi PERS's resources such that it would be unable to give the present case the necessary attention. Stated differently, neither Local 338 nor Teamsters 710 offer any evidence that Mississippi PERS has inadequately represented the interests of any class based on its lead-plaintiff role in multiple securities class actions at the same time, or that it will do so here. Essentially, then, the Court is faced with only assertions that Mississippi PERS's status as lead plaintiff in these other cases could interfere with its ability to represent the purported class. Mere allegations cannot rebut the statutory presumption in favor of a lead plaintiff. *See OFI Risk Arbitrages*, 63 F. Supp. 3d at 402 ("The Third Circuit has stressed that the PSRLA requires more than mere assertions in order to rebut the presumptive lead plaintiffs' status."); *see also In re Cendant*, 264 F.3d at 270 ("Allegations of impropriety are not proof of wrongdoing. If they were, then any class member (or lawyer seeking to be appointed lead counsel) could disable any presumptive lead plaintiff by making unsupported allegations of impropriety.").

In sum, the Court finds that Mississippi PERS's status as lead plaintiff in seven other securities class actions does not bar it – automatically or otherwise – from serving as Lead Plaintiff here. Neither Teamsters 710 nor Local 338 offer any other challenge to Mississippi PERS's ability to serve as Lead Plaintiff in the present action. Instead, both focus exclusively on the fact that, in

11

their view, Mississippi PERS should automatically be barred from serving as Lead Plaintiff under the 5-in-3 Rule. Having found that Mississippi PERS is not barred from serving as Lead Plaintiff on these grounds, the Court finds that no party has rebutted the presumption in favor of Mississippi PERS as Lead Plaintiff.

### C. Approval of Lead and Liaison Counsel

Once appointed, a lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[The PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *In re Cendant*, 264 F.3d at 276. Here, the Court's role is generally limited to reviewing and approving (or disapproving) of the lead plaintiff's choice of counsel. *Id.* at 273. The fundamental inquiry is "whether the lead plaintiff's selection and agreement with counsel are reasonable on their own terms." *Id.* at 276. Relevant factors to consider include: (1) the lead plaintiff's legal experience and sophistication; (2) how the lead plaintiff chose potential law firms to consider; (3) how the lead plaintiff selected its proposed counsel; (4) the qualifications and experience of lead plaintiff's proposed counsel; and (5) evidence relating to whether the retainer agreement arose out of serious negotiations between the lead plaintiff and its proposed counsel. *Id.*

Mississippi PERS requests that the Court approve its selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel and Rosenthal, Monhait & Goddess, P.A. ("Rosenthal Monhait") as Liaison Counsel for the proposed class in the present action. (*See* D.I. 16). Kessler Topaz has extensive experience in securities fraud litigation, as well other types of class actions, and it has served as lead (or co-lead) counsel in many cases over the last 20 years. (*See* D.I. 20, Ex. D). Kessler Topaz has obtained a significant number of sizeable

12

settlements in these cases over the years. (*Id.*). As to the proposed Liaison Counsel,[5] Rosenthal Monhait is a Delaware firm that has served as liaison counsel in many securities litigations and other class actions in both state and federal court here in Delaware. (*Id.*, Ex. E). Neither Teamsters 710 nor Local 338 offer any objection to the Lead and Liaison Counsel proposed by Mississippi PERS. The Court finds no basis here to disturb the PSLRA's "strong presumption" in favor of a lead plaintiff's selection and retention of counsel. Therefore, the Court will approve of Mississippi PERS's selection of Kessler Topaz as Lead Counsel and Rosenthal Monhait as Liaison Counsel for the proposed class.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Mississippi PERS's motion (D.I. 16) in its entirety and DENIES Teamsters 710's motion (D.I. 12) and Local 338's motion (D.I. 15). An appropriate order will follow.

---

[5] Liaison counsel generally serves an administrative role in class actions, with responsibilities including but not limited to facilitating communications between the court and other counsel, receiving and distributing notices, orders and other court filings, coordinating positions and meetings of counsel, and advising the parties of relevant case developments. *See KBC Asset Mgmt. NV on behalf of Chemed Corp. v. McNamara*, 78 F. Supp. 3d 599, 607 n.8 (D. Del. 2015); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.221 (2005). Liaison counsel typically has an office in the district where the action is pending. *KBC Asset*, 78 F. Supp. 3d at 607 n.8.