IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE ADVANCE AUTO PARTS, INC., SECURITIES LITIGATION. | Civ. No. 18-212-RGA |

**MEMORANDUM**

Lead plaintiff Public Employees' Retirement System of Mississippi asserts claims for federal securities fraud under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. The Section 10(b) claim is asserted against Advance Auto Parts, Inc., Thomas R. Greco, and Thomas Okray (the "Advance Auto Defendants"). Greco and Okray (the "Individual Defendants") were the Chief Executive Officer and Chief Financial Officer of Advance Auto, respectively. The Section 20(a) claim is asserted against Starboard Value LP and Jeffrey C. Smith (the "Starboard Defendants") as well as the Individual Defendants. Starboard is a hedge fund that owned approximately 3.7% of Advance Auto's shares, and Smith was the Chief Executive Officer of Starboard. In connection with Starboard's investment in Advance Auto, Smith was also appointed to the Board of Directors for Advance Auto.

In a nutshell, the complaint alleges that Defendants projected increased sales and operating margins for Advance Auto in fiscal year 2017 (the "FY17 projections") at a time when they knew those projections were unattainable.[1] When "the truth finally emerged" in August 2017, the Company's stock price dropped. (D.I. 46 ¶¶ 196–204). Plaintiff thereafter initiated this lawsuit.

The Advance Auto Defendants and the Starboard Defendants have each filed a motion to dismiss Plaintiff's amended class action complaint (the "complaint"). (D.I. 56; D.I. 57). The court

---

[1] The fiscal year for Advance Auto is the same as the calendar year, January to December.

1

has jurisdiction pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331. For the reasons discussed below, the motion to dismiss filed by the Advance Auto Defendants is granted in part and denied in part and the motion to dismiss filed by the Starboard Defendants is granted.

## I. STANDARD OF REVIEW

### A. Rule 12(b)(6)

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive the motion to dismiss, the complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Twombly*, 550 U.S. at 555. In assessing the plausibility of a claim, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). The court's review is limited to the allegations in the complaint, exhibits attached to the complaint, and documents incorporated by reference. *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 697 F. Supp. 1360, 1362 (D. Del. 1988).

### B. Rule 9(b) & the PSLRA

All securities fraud claims are subject to the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act (the "PSLRA"). *Inst. Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Put another way, Rule 9(b) requires that a plaintiff set forth "the who, what, when, where and how" of the alleged fraud. *In*

2

*re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999). Under the PSLRA, plaintiffs must: (1) "specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading;" and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (internal citations and punctuation omitted) (quoting 15 U.S.C. § 78u–4(b)(1) and 15 U.S.C. § 78u–4(b)(2)).

## II. DISCUSSION

Plaintiff asserts claims for federal securities fraud under Section 10(b) and Section 20(a) of the Securities Exchange Act. Each section is addressed in turn.

### A. Section 10(b)

To state a claim for violation of Section 10(b) and Rule 10b–5 promulgated thereunder, Plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

Defendants' motions to dismiss focus on the elements of materiality, falsity, and scienter. To discuss materiality and falsity, I have grouped the sixteen statements on which Plaintiff proceeds into the following categories: projections, opinions, puffery, and falsity. For any statements that survive Defendants' materiality and falsity challenges, I will address scienter. Finally, I dismiss at the outset Plaintiff's claim based on Item 303 of Regulation S-K, because Plaintiff responded to Defendants' arguments with two conclusory sentences, which is inadequate. (D.I. 65 at 54-55).

3

## 1. Projections

At the heart of the complaint, Plaintiff alleges that Advance Auto's FY17 projections were false when made. Here, the term "FY17 projections" refers to the following statements:

- In the 3Q 2016 Conference Call, held on November 14, 2016, Okray stated, "For 2017, we will deliver positive sales comp growth and a modest increase in operating margin." (D.I. 46 ¶¶ 160, 162).

- In the 4Q 2016 Press Release, issued on February 21, 2017, the Company stated that, for 2017, comparable store sales will grow between "0% to 2%" and adjusted operating income will "improve[]" by "15 to 35 basis points." (Id. ¶¶ 164, 173).

- In the 4Q 2016 Conference Call, held the same day, Okray reiterated that the Company "expect[s] to deliver comparable store sales in the range of 0% to 2% and store sales in the range of 0% to 2% and an adjusted operating margin increase between 15 basis points to 35 basis points for the year." (Id. ¶¶ 167).

- In the 1Q 2017 Conference Call, held on May 24, 2017, Greco stated "[t]hat [FY17 projections] stands as we sit here today." (Id. ¶¶ 176-77, 181).

- In the same 1Q 2017 Conference Call, Okray added, "we're not going to change guidance [i.e., projections] in fiscal year '17. We're comfortable with the outlook for [adjusted operating income] that we provided." (Id.).

A projection is an untrue statement under Section 10(b) and Rule 10b-5 if it was issued "without a reasonable basis." *In re Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645–46 (3d Cir. 1989); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1427 (3d Cir. 1997). A projection lacks a reasonable basis, and is thus actionable, if it was "made with either (1) an inadequate consideration of the available data or (2) the use of unsound forecasting methodology." *Burlington*, 114 F.3d at 1429. Although the test is disjunctive, Plaintiff asserts that both prongs are satisfied here.

### a. Consideration of Available Data

The complaint alleges that Defendants' FY17 projections lacked a reasonable basis, because Defendants ignored two internal forecasts predicting negative growth: (1) an internal forecast prepared by the Company's Finance Department, and (2) a more aggressive forecast

4

ordered by Greco. In August 2016, the forecast by the Finance Department projected gross sales growth of negative 3%. (D.I. 46 ¶ 145). In late December 2016, those same projections dropped to negative 4% to 5%. (*Id.* ¶ 150). Around Thanksgiving 2016, even Greco's aggressive forecasts predicted negative 1.5% gross sales growth for 2017. (*Id.*). Courts have found that projections lack a reasonable basis where defendants were aware of contradictory internal forecasts. *See, e.g., FSP Stallion 1 v. Luce*, 2009 WL 1219683, at *4-5 (D. Nev. May 1, 2009); *Selbst v. McDonald's Corp.*, 2005 WL 2319936, at *9-10 (N.D. Ill. Sept. 21, 2005); *see also Provenz v. Miller*, 95 F.3d 1376, 1386 (9th Cir. 1996) (reversing summary judgment where CFO's financial projections contradicted internal forecasts of losses).

According to Defendants, the internal forecasts did not contradict their public statements, because the internal forecasts measured "gross sales," whereas the public statements discussed "comparable store sales," or "comp sales," as its sometimes called. (D.I. 58 at 17). Defendants own public filings, however, expressly state that there is a causal link between gross sales and comparable store sales. (*See* D.I. 62-1, Ex. 4 at 17 (stating that a decline in total (gross) sales was "primarily related to a comparable store sales decline")). This causal link is further demonstrated by the fact that total sales and comparable store sales were essentially the same in fiscal year 2017. (*See id.* (reporting that total sales and comparable store sales both declined 2.0%)). Where one key measure of a business's health is intertwined with another, statements about the first may implicate the second. *See, e.g., Avaya*, 564 F.3d at 271 (finding that a CFO's concern with margins supports a reasonable inference that he was also paying close attention to price discounting, because a change in pricing would "directly affect margins"). For these reasons, I am not persuaded on a motion to dismiss that the internal forecasts regarding gross sales did not contradict public statements about comparable store sales.

5

Defendants also ask the court to discount the internal forecast allegations, because they rely on a low-level employee given the pseudonym "FE 8." (D.I. 58 at 18-19). Courts will not disregard a confidential witness' allegations simply because he or she was a low-level employee. *Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, 363 F. Supp. 3d 476, 493 (D. Del. 2019). Instead, confidential witnesses must be described "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 148 (3d Cir. 2004). Where the complaint "adequately describe[s] the duration of each C[onfidential W[itness]'s employment, the time period during which the CWs acquired the relevant information, and how each CW had access to such information," that information will be credited. *Avaya*, 564 F.3d at 263.

Here, FE 8 is described as a Senior Finance Executive who was serving in that capacity when Defendants made the allegedly misleading projections in November 2016, February 2017, and May 2017. (D.I. 46 ¶ 48). FE 8 was only a single layer removed from Okray, reporting directly to Kevin Quinn, Vice President of Finance. (*Id.*). FE 8 was personally responsible for preparing the Finance Department's forecasts along with other members of the Department, such as FE 1, using a data-driven, algorithmic methodology. (*Id.* ¶¶ 39, 48). Accordingly, FE 8's position and responsibilities within the Company, and the time period during which he occupied that position, supports his or her credibility. *See Selbst*, 2005 WL 2319936 at *7 (crediting allegations where confidential witness was responsible for overseeing the financial reporting that undermined defendants' projections).

### b. Forecasting Methodology.

Defendants assert that their forecasting methodology was reasonable, because the Company had positive comparable store sales growth in 4Q 2016. (D.I. 58 at 12, 19). For several

reasons, Defendants' argument is unpersuasive on a motion to dismiss. First, it asks the court to weigh competing interpretations of the facts. Second, the 4Q 2016 results issued on February 21, 2017 did not exist in November 2016, when Defendants issued their first set of purportedly misleading projections. Finally, it is plausible to find that a projection lacks a sound methodology where it is based on a single data point in a sea of contrary data points. Here, the positive comp store sales in 4Q 2016 followed four quarters of negative results. (D.I. 46 ¶ 74). Thus, the complaint states a claim that the projections lacked a reasonable basis due to an inadequate methodology.

## 2. Opinion

The complaint challenges the following statements as false and misleading:

- In the 4Q 2016 Conference Call, Greco stated, "we plan to accelerate sales growth to above the industry average, and we're going to close the margin gap versus our competition." (D.I. 46 ¶¶ 166, 173).

- In the 1Q 2017 Conference Call, Greco stated, "we remain confident with the progress we're making as we execute our plan and expect sales and customer momentum to continue with more operating leverage as we enter the back half of 2017."[2] (*Id.* ¶¶ 176, 181).

- Also in the 1Q 2017 Conference Call, Greco commented on the "soft patch" in sales compared to previous quarters, stating, "[e]verything we look at says that this was a blip, not a trend." (*Id.* ¶¶ 178, 183).

The above statements are opinions. *See In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 758 (S.D.N.Y. 2018) (explaining that statements expressing expectations about the future are statements of opinion); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2013 WL 6504801, *16 (S.D.N.Y. Dec. 11, 2013) (statement that company

---

[2] Contrary to Defendants' assertion, this statement is not puffery, because it does not make vague and exaggerated assertions. (D.I. 58 at 30). Instead, Greco is explicitly stating that: (1) the Company presently had a plan it was executing, (2) the Company was presently experiencing "progress" as well as "sales and customer momentum"; and (3) that progress and momentum should continue as the Company continues to execute its plan.

thinks "the worst is behind us" is an opinion); *Bielousov v. GoPro, Inc.*, 2017 WL 3168522, at *4 (N.D. Cal. July 26, 2017) (statement that "[w]e believe we're still on track" is an opinion).

An opinion statement is actionable only if (1) the speaker did not actually hold the stated belief at the time made; (2) the opinion contains "embedded statements of fact" that were untrue; or (3) the speaker omitted known material facts that "conflict with what a reasonable investor would take from the statement itself." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1326–29 (2015). Plaintiff is proceeding under the third prong. (D.I. 65 at 32). In particular, Plaintiff argues that the above opinion statements are actionable, because Defendants failed to disclose the following adverse facts:

1. Greco and Okray disregarded the Finance Department's negative forecasts (-3% in August 2016 and -4% to -5% in December 2016) in favor of numbers based on an unsound methodology. (D.I. 46 ¶¶ 145, 150).

2. By 4Q 2016, Advance Auto missed its operating margin target by the largest gap as compared to any point earlier in the year, and continued to miss the margin set forth in its Annual Operating Plan (i.e., target or budget) by double-digit basis points into the first and second quarters of 2017. (*Id.* ¶¶ 140, 142).

3. Sales from mid-2016 through the following summer were consistently trending down, nationwide, and the sales team was consistently missing its targets. (*Id.* ¶¶ 140–142).

Given the above allegations, the complaint has, contrary to Defendants' assertions (*see* D.I. 58 at 22), alleged particularized facts suggesting a lack of reasonable basis for the opinions.

Defendants further argue that the opinion statements are not actionable, because the complaint does not allege that the opinions were not honestly believed. (*Id.* at 21). But that allegation is not required here, because Plaintiff is not proceeding under the first prong of *Omnicare*. Only the first prong of *Omnicare* requires the speaker to not actually hold the stated belief. 135 S. Ct. at 1326–29. Plaintiff, however, is proceeding under the third prong. (D.I. 65 at 32-34).

8

### 3. Puffery

"Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993). Puffery statements "are so vague and such obvious hyperbole that no reasonable investor would rely upon them." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 547 (8th Cir.1997). Because puffery is so "obviously" unimportant, "courts can rule them immaterial as a matter of law at the pleading stage." *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 283 (3d Cir. 2010) (quoting *In re Burlington*, 114 F.3d at 1426).

The following statements, alleged in the complaint to be material misrepresentations, are in instead inactionable puffery:

- "We're very excited about our comp prospects for next year, very excited about it." (D.I. 46 ¶¶ 161, 162).
- "[W]e're really excited about 2017." (*Id.* ¶¶ 166, 173).
- "[W]e really are excited about the performance in the fourth quarter on the comp sales[.]" (*Id.* ¶¶ 169, 173).
- "[W]e're very pleased with our improving comp sales performance." (*Id.* ¶¶ 170, 173).

Courts have routinely found that statements using words like "excited" and "pleased" constituted inactionable puffery. *See In re Milestone Sci. Sec. Litig.*, 103 F. Supp. 2d 425, 458 (D.N.J. 2000) (stating that "we are very excited over the reactions of dentists" and "we are very pleased with the amount of orders we have so far" is puffery); *In re Cybershop.com Sec. Litig.*, 189 F. Supp. 2d 214, 232 (D.N.J. 2002) (stating that "we are very excited about this deal" and the fourth quarter is "very exciting" is puffery).

### 4. Falsity

Under the PSLRA, the complaint must plead with particularity the "the reasons why" the statements were false or misleading when made. *Avaya*, 564 F.3d at 252. "This is the falsity

9

requirement." *In re Fisker Auto. Holdings, Inc. S'holder Litig.*, 2015 WL 6039690, at *13 (D. Del. Oct. 15, 2015). To allege falsity, the Plaintiff "must account for the entirety of [the statements] on which they rely, and not simply invoke selective quoting to make their claims." *See In re Ocera Therapeutics, Inc. Sec. Litig.*, 2018 WL 7019481, at *11 (N.D. Cal. Oct. 16, 2018).

The complaint fails to adequately allege falsity for the following statements:

- In the 3Q 2016 Press Release, Greco is quoted as saying, "Our third quarter results reflect progress in driving our top line as the initiatives and investments we are making to stabilize and improve our sales performance began to take hold." (D.I. 46 ¶¶ 159, 162).

- The 1Q 2017 Press Release states that the Company "delivered positive sequential improvement in comparable store sales performance." (D.I. 46 ¶¶ 175, 181).

- In the 1Q 2017 Conference Call, Greco stated, "[W]e've seen a dramatic improvement in our comps." (*Id.* ¶¶ 177, 181). In the same conference call, Greco stated, "We've actually seen improved trends over the last several weeks, and based on this, we expect a more normalized environment for the rest of the year." (*Id.* ¶¶ 177, 183).

- In both the 1Q 2017 Press Release and 1Q 2017 Conference Call, Defendants attributed the disappointing performance in 1Q 2017 to "winter related demand," the "weather," and "short-term headwinds that were not planned." (D.I. 46 ¶¶ 175, 176, 183).

The reason why the complaint fails to adequately allege falsity is context specific. Accordingly, each of the four statements is addressed in turn.

First, for claims based on Greco's discussion of "progress" in the 3Q 2016 Press Release, the context makes clear that Greco is referring to sequential improvement in comp store sales compared to previous quarters. The next sentence of Greco's quote is: "While we delivered sequential improvement, our results are not where we want them to be ...." (D.I. 46 ¶ 159). In the conference call, Greco reiterated that the Company "delivered sequential improvement versus previous quarters" in comp-store performance. (D.I. 62-1, Ex. 16 at 3). The complaint, however, does not allege that 3Q 2016 comp store sales were not a sequential improvement over prior quarters. And indeed, if "sequential improvement over prior quarters" means that each quarter

10

had better results than the last, then Advance Auto's SEC filings show such an improvement, with the exception of 2Q 2016. Comparable store sales was -2.5% in 4Q 2015, -1.9% in 1Q 2016, -4.1% in 2Q 2016, and -1% for 3Q 2016. (D.I. 62-1, Ex. 13 at 3, Ex. 14 at 4, Ex. 15 at 3, Ex. 16 at 3). If Plaintiff is relying on the outlier results of 2Q 2016 to prove falsity, then it is Plaintiff's burden under the PSLRA to "specify each statement alleged to have been misleading and *the reason or reasons why* the statement is misleading." *Tellabs*, 551 U.S. at 321 (emphasis added). Plaintiff has not met that burden. Accordingly, any claims based on the "progress" described in the 3Q 2016 Press Release are dismissed without prejudice.

Second, for claims based on the "positive sequential improvement" discussed in the 1Q 2017 Press Release, the statement is comparing only two time periods: 3Q 2016 versus the combined time period covering 4Q 2016 and 1Q 2017. Specifically, the press release states:

> As expected, comparable store sales were unfavorably impacted by the shift in New Year's Day to the first quarter of 2017 as well as the significant shift of winter related demand into December. These factors pulled sales forward into the fourth quarter of 2016 and reduced comparable store sales in the first quarter. *Taking into account these shifts and normalizing for their impact across the 28 week period including the fourth quarter of 2016 and first quarter of 2017, <u>we delivered positive sequential improvement in comparable store sales</u> performance of approximately 70 basis points versus the third quarter of 2016.*

(*Id.* ¶ 175). The complaint does not allege that comparable store sales between the two time periods, when taking into account the shifts described, did not actually improve by 70 basis points. Indeed, Plaintiff did not respond to Defendants' arguments on this point at all. (*See* D.I. 65). Accordingly, any claim based on positive sequential improvements described in the 1Q 2017 Press Release is dismissed without prejudice.

Third, for claims based on the "dramatic improvement" or "improved trends" discussed in the 1Q 2017 Conference Call, context demonstrates that the statements referred only to the trends

11

in the four-week time period between the end of Q1 and the conference call.[3] When Greco said the Company had seen "dramatic improvement" he was responding to a question about trends "following the end of Q1." (D.I. 46 ¶ 177). In the other statement, Greco explicitly stated that the trends had been observed "over the last several weeks," i.e. the weeks before the call. (*Id.*). The complaint does not allege that the Company did not experience improved trends in the four weeks between the end of 1Q and the 1Q 2017 Conference Call. And, indeed, for Q2, which would have covered those four weeks, Advance Auto did report improved comp store sales. They were flat versus the prior year, which is better than the negative 1% reported for Q1. Accordingly, any claims based on the "improvements" described in the 1Q Conference Call are dismissed without prejudice for failure to adequately plead falsity.

Finally, for claims based on discussion of the weather in the 1Q 2017 Press Release and Conference Call, Plaintiff relies on allegations made by former employees to show that Defendants falsely blamed weather for the Company's disappointing performance. (*Id.* ¶ 183). Specifically:

> FE 3 "would have been fired" if FE 3 had blamed poor sales on weather. FE 16 had never heard that gas or weather was causing negative sales. FE 14 said gas and weather were no more of a factor for [Advance Auto] than for any other retailer. In short, according to FE 9, "[w]hatever they said to Wall Street was not real."

(*Id.* ¶ 154). These statements, however, do not adequately allege falsity. For FE 3, I do not see a correlation between the existence of good or bad weather and the acceptable excuses an employee may use for not hitting sales targets. For FE 16, there is no allegation that if weather was to blame, someone would have told him, so the fact that FE 16 did not hear that weather was causing negative sales does not mean that it was not true. FE 14's statement that weather impacts all retailers equally is not helpful, because the complaint does not allege that other retailers experienced good weather.

---

[3] For Advance Auto, Q1 ended on April 22, 2017, and the 1Q 2017 Conference Call occurred a little over four weeks later, on May 24, 2017. (D.I. 62-1, Ex. 7).

12

Finally, FE 9's statement that "[w]hatever they said to Wall Street was not real" is too generic and conclusory to satisfy the heightened pleading standard of the PSLRA. *See Chubb*, 394 F.3d at 155 (stating that "[g]eneric and conclusory allegations based upon rumor or conjecture" do not satisfy the heightened pleading standard); *In re SuperCom Inc. Sec. Litig.*, 2018 WL 4926442, at *24 (S.D.N.Y. Oct. 10, 2018) (statement that "95 percent of the leads coming in . . . were not real" failed to demonstrate with specificity how the statements at issue were false or misleading). Accordingly, any claim based on statements in 1Q 2017 about winter weather impacting sales is dismissed without prejudice.

### 5. Scienter

For the reasons explained above, Plaintiff's claims based on the projection statements and the opinion statements survive Defendants' challenges based on falsity and materiality.[4] *See supra* Section II(A)(1)-(2). Defendants argue that those claims should nevertheless be dismissed, because the complaint fails to allege scienter. (D.I. 58 at 32-38).

Under the PSLRA, the complaint must "state with particularity facts giving rise to a strong inference that the defendants acted with the required state of mind," i.e., that defendants acted with "scienter." 15 U.S.C. § 78u–4(b)(2)(A); *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 242 (3d Cir. 2013). Scienter is defined as a "'knowing or reckless' mental state 'embracing intent to deceive,

---

[4] To avoid confusion, those surviving statements are: "For 2017, we will deliver positive sales comp growth and a modest increase in operating margin" (D.I. 46 ¶¶ 160, 162); For 2017, comparable store sales will grow between "0% to 2%" and adjusted operating income will "improve[]" by "15 to 35 basis points" (*id.* ¶¶ 164, 173); "That [FY17 projections] stands as we sit here today," and "we're not going to change guidance [i.e. projections] in fiscal year '17. We're comfortable with the outlook for OI adjusted that we provided" (*id.* ¶¶ 176-77, 181); "[W]e plan to accelerate sales growth to above the industry average, and we're going to close the margin gap versus our competition" (*id.* ¶¶ 166, 173); "[W]e remain confident with the progress we're making as we execute our plan and expect sales and customer momentum to continue with more operating leverage as we enter the back half of 2017" (*id.* ¶¶ 176, 181); "Everything we look at says that this was a blip, not a trend" (*id.* ¶¶ 178, 183).

13

manipulate, or defraud.'" *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (quoting *Avaya*, 564 F.3d at 252). Recklessness is "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Avaya*, 564 F.3d at 267 n. 42 (quoting *In re Advanta*, 180 F.3d at 535). A strong inference of scienter is one that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

Plaintiff argues that Defendants had actual knowledge of the inaccuracies of their growth projections. (D.I. 65 at 45-47). The complaint alleges that Defendants (1) "were shown," and then ignored, negative internal forecasts predicting declines in sales that directly contradicted their public projections of positive growth (D.I. 46 ¶¶ 145, 150); (2) created a secondary set of more "aggressive" internal forecasts that also portended declining sales (*id.* ¶ 146); (3) received consistent reports of declining comp store sales growth, operating margin misses, and declining sales across the country (*id.* ¶¶ 140–43); and (4) regularly discussed the "negative comp" status of the Company's Regional Vice Presidents, captured in Greco's Claw Back Spreadsheet[5] (*id.* ¶ 140).

Courts regularly draw an inference of scienter where "Defendants had access to internal forecasts and the company's financial data" indicating that the company "could not meet the projected revenues." *In re Catalina Mktg. Corp. Sec. Litig.*, 390 F. Supp. 2d 1110, 1115 (M.D. Fla. 2005) (scienter sufficiently alleged where "Defendants were 'regularly confronted with Catalina's declining sales figures through attending regular meetings, by receiving several different types of internal forecasting reports, . . . and by face-to-face meetings with senior level

---

[5] The "Claw Back Spreadsheet" is a spreadsheet, personally created by Greco, which calculated, among other things, how many additional sales were needed to get back to Advance Auto's Operating Plan. (D.I. 46 at "Key Terms").

14

management employees'"); *Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Swanson*, 2011 WL 2444675, at *12 (D. Del. June 14, 2011) (scienter adequately alleged where "Defendants had access to sales data and internal reports, and had meetings and calls with company insiders about the performance of the business"); *Selbst*, 2005 WL 2319936, at *23 (scienter adequately alleged where defendants "were aware that 'McDonald's internal forecasts [] projected declining systemwide sales growth in 2002'"). Accordingly, Plaintiff pleads sufficient facts to support an inference of scienter as to the projection and opinion statements.

Defendants argue that stock acquisitions by Greco and Okray during the class period negate any inference of scienter. (D.I. 58 at 32-34). But this argument is not persuasive for several reasons. First, "there is no *per se* rule that stock purchases negate any inference of scienter." *In re Fannie Mae 2008 Sec. Litig.*, 2011 WL 13267340, at *3 (S.D.N.Y. Apr. 11, 2011). Thus, courts have regularly found scienter even where insiders purchased shares during the class period. *See, e.g., In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 320 (S.D.N.Y. 2013) (rejecting argument that share purchases negate inference of scienter); *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V.*, 2005 WL 1365465, at *13 (D.N.J. June 7, 2005) (noting that stock purchases can sometimes undermine an inference of scienter, but "that is not the case here").

Second, all of Okray's stock and 72% of Greco's stock was acquired through restricted stock units granted as part of their compensation package and performance awards. (D.I. 62-1, Exs. 20-24; D.I. 65 at 53). In general, stock purchases made during the class period negate an inference of scienter based on "the intuition that a defendant would not sink his own ship." *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 396 (D. Del. 2016). But that inference is not as strong where the stock was acquired automatically as part of an executive's compensation package. Indeed, the inference could cut the other way when the

stock is awarded based on "achieving certain predetermined performance conditions," as some of the stock here was. (D.I. 62-1, Exs. 20-21). Finally, Greco personally purchased a small portion of the stock he received (D.I. 68 at 21), but that does not, by itself, give rise to an inference of nonfraudulent intent more compelling than the inference created by the facts alleged in the complaint.

### B. Section 20(a)

An individual who controls a violator of Section 10(b) of the Securities Exchange Act may be liable under Section 20(a). *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006); *see also* 15 U.S.C. § 78t(a). To state a claim under Section 20(a), Plaintiff must plead: (i) "a primary violation of the federal securities laws by a controlled person"; (ii) "control of the primary violator by the defendant"; and (iii) "that the controlling person was in some meaningful way a culpable participant in the primary violation." *In re DaimlerChrysler AG Sec. Litig.*, 197 F. Supp. 2d 86, 100 (D. Del. 2002); *see also Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484–85 (3d Cir. 2013) (stating that in addition to the statutory elements, the plaintiff must show that defendant was a "culpable participant" in acts constituting a violation). Plaintiff asserts Section 20(a) claims against Greco and Okray, and against the Starboard Defendants.

Greco and Okray contend that the Section 20(a) claims against them should be dismissed, because Plaintiff failed to plead "culpable participation," or more specifically, that that they acted, or failed to act, with the requisite state of mind. (D.I. 58 at 40). Plaintiff contends that complaint adequately pleads Section 20(a) claims against Greco and Okray, because the complaint adequately pleads Section 10(b) violations against them. (D.I. 65 at 55). Several Section 10(b) claims that survived the motion to dismiss were based on statements made by Greco and Okray. *See infra* Section II(B). "There is no rule that prevents a plaintiff from alleging a § 20(a) violation

16

and § 10(b) violation against the same defendant." *Univ. Am. Corp. v. Partners Healthcare Sol. Holdings, L.P.*, 176 F. Supp. 3d 387, 398 (D. Del. 2016). Accordingly, I deny the motion to dismiss the Section 20(a) claims asserted against Greco and Okray that are based on the projection and opinions statements.

The Starboard Defendants contend that the complaint does not adequately allege their control over the primary violator. Plaintiff argues that Starboard and Smith had actual control because Starboard held a minority stock ownership in Advance Auto, appointed four directors, including Smith, to its board, forced the resignation of its former CEO, Jackson, and Smith got his way in pushing for certain cost cuts. (D.I. 65 at 56-58). The claims against Starboard fail, because allegations of control are insufficient where the plaintiff merely alleges that the defendant owned a minority stock interest and selected a minority number of directors. *See LLDVF, L.P. v. Dinicola*, 2010 WL 3210613, at *13 (D.N.J. Aug. 12, 2010) (collecting cases). The claims against Smith fail, because "[t]he mere fact that an individual is a director of a firm is not sufficient to show he is a controlling person of the firm." *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002) (internal punctuation omitted). In addition, Smith's "presence" at Advance Auto's offices and push for certain cost cuts do not show, as required, how he played a role in the alleged false statements. *See id.* at 561-62 ("unsupported allegations regarding management responsibilities fail to allege with the requisite specificity that the individual defendants played a role in the alleged nondisclosures"); *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 399 (D. Del. 2016) ("General allegations pertaining to management responsibilities fail to allege control with the requisite specificity, as the control person must be shown to possess actual control over the transactions in question.") (internal alterations omitted) (quoting *Digital Island*, 223 F. Supp. 2d at 560-61).

Even if the complaint adequately alleged control by the Starboard Defendants, it does not allege culpable participation. Culpable participation for purposes of Section 20(a) "refers to either knowing and substantial participation in the wrongdoing or inaction with the intent to further the fraud or prevent its discovery." *Stichting Pensioenfonds ABP v. Merck & Co.*, 2012 WL 3235783, at *11 (D.N.J. Aug. 1, 2012). The complaint does not allege that the Starboard Defendants controlled the drafting or publishing of the press releases at issue, or that the Starboard Defendants reviewed or signed them before publication. Instead, the complaint's allegations regarding Starboard Defendants' culpable participation are entirely conclusory. *See, e.g.*, D.I. 46 ¶ 233 ("Starboard and Smith ... culpably participated in Defendants' fraud"); *id.* ¶ 274 ("The Section 20(a) Defendants were culpable participants in Advance Auto's fraud alleged herein, by acting knowingly and intentionally, or in such a deliberately reckless manner as to constitute willful fraud and deceit.")). Such conclusory allegations do not satisfy the PSLRA's particularity requirement. Accordingly, the Section 20(a) claims against the Starboard Defendants are dismissed without prejudice.

## III. CONCLUSION

For the foregoing reasons, the motion to dismiss filed by the Advance Auto Defendants (D.I. 56) is granted in part and denied in part. For Count I, based on Section 10(b) of the Securities Exchange Act, the motion is denied as to the claims based on the projection statements and the opinion statements, and the motion is granted as to all remaining statements. The dismissed claims are dismissed without prejudice. For Count II, based on Section 20(a) of the Securities Exchange Act, the motion is denied as to the projection statements and opinion statements, and the motion is granted as to all remaining statements. The dismissed claims are dismissed without prejudice.

For the foregoing reasons, the motion to dismiss filed by the Starboard Defendants (D.I. 57) is granted, and the claims against them are dismissed without prejudice.

Dated: February 7, 2020

/s/ Richard G. Andrews
UNITED STATES DISTRICT JUDGE