**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE ADVANCE AUTO PARTS, INC. SECURITIES LITIGATION | Case No. 18-CV-00212-RGA <br><br> <u>CLASS ACTION</u> |

**STIPULATED ESI PROTOCOL**

To facilitate discovery in this above-captioned action (the "Action"), Lead Plaintiff the Public Employees' Retirement System of Mississippi and Defendants Advance Auto Parts, Inc., Thomas R. Greco, and Thomas Okray (collectively, "Parties"), through their counsel, have stipulated and agreed to give effect to this Stipulation Establishing Electronic Discovery Protocol ("ESI Protocol") as set forth below.[1]

**WHEREAS** certain documents and information have been and may be requested, sought, produced, or exhibited by, between, and among the Parties that involve electronically stored information ("ESI"); such records and data shall be produced by the Parties in accordance with the following protocol:

**I.      DEFINITIONS**

**A.      "Electronically stored information,"** or **"ESI,"** as used herein, has the same meaning as in Rules 26 and 34 of the Federal Rules of Civil Procedure and includes means and refers to information or data of any kind that is stored in or on any electronic storage media.

**B.      "Native data format"** means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

---

[1]     This ESI Protocol shall overrule and supersede this District's Default Standard for Discovery, Including Discovery of Electronically Stored Information.

C.      **"Metadata"** means and refers to information about information or data about data, and includes, without limitation: (1) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generates, edits, or modifies such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (2) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

D.      **"Documents"** is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and includes hard-copy documents, electronic documents, and ESI.

E.      **"Storage Media"** means an object or device, real or virtualized, including but not limited to a disc, tape, computer, mobile device, smartphone, tablet, physical storage server, Cloud system (public, private or hybrid), or other device on which data is or was stored.

## II.     PRESERVATION

A.      Each party shall be responsible for taking reasonable and proportional steps to preserve potentially relevant documents and ESI in its possession, custody, or control.

1.      Absent a showing of good cause by the requesting party, the categories of ESI identified in the attached Appendix 2 hereto need not be preserved, unless such categories of ESI are otherwise captured by the parties' existing preservation procedures.

2.      Absent a showing of good cause, the Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the Parties shall preserve the non-duplicative discoverable information currently in their possession, custody, or control.

**B.**     ESI will be collected in a manner that preserves all reasonably available metadata. Duplicates should be removed from all ESI productions in a manner that does not break up document families (such as emails and attachments), but any collected, duplicate ESI that is not produced should be preserved.

## III.     SEARCH PARAMETERS

**A.**     The Parties will negotiate method(s) to be applied to collect discoverable information in accordance with their obligations under the Federal Rules, the Local Rules, this ESI Protocol, and any other applicable rule or law. The Parties agree that they will cooperate in good faith regarding the disclosure and formulation of appropriate search methodologies, search terms, and search parameters. The Parties have begun to meet and confer, and agree to continue meeting and conferring, to discuss, *inter alia:*

- Search methodology(ies) to be utilized (including but not limited to TAR, Boolean searches and any collection/review of non-email documents);

- Disclosure and selection of all search terms, including search terms based upon actual terminology used in the producing party's documents;

- Disclosure and selection of custodians;

- Disclosure of sources of ESI (including non-custodial sources) reasonably likely to have information relevant to the Parties' claims and defenses and selection of sources of ESI;

- Disclosure of documents and ESI that can be collected without search terms;

- Search parameters; and

- Post-search error sampling and hit/sampling/testing reports, including testing of a null set.

**B.**     If the producing party wishes to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party.

**C.**     The Parties shall use good faith efforts to attempt to mutually agree upon search terms, custodians, and other sources of ESI that are reasonably tailored to return documents

responsive to the discovery request(s) at issue and are proportional to the needs of the case, which may include the producing party providing information about certain words or phrases that might have been used to describe matters at issue. The Parties agree that "metrics" searches (e.g., hit counts, elusion rate, null set), in which test searches are run on the e-mail accounts and other data sources of potential custodians, may help the Parties refine the searches and identify custodians whose files will be searched, reviewed for production, and produced. The Parties also agree that sampling of search results, in which random samples of emails returned by search strings are reviewed, may help the Parties refine the searches and identify custodians whose emails will be searched, reviewed for production, and produced. If the producing party performs such "metrics" searches and sampling of search results, it will make good faith efforts to do so as soon as practicable after the Parties' meet and confer on these issues. The Parties will disclose the results of such "metrics" searches and sampling and meet and confer about the results as may be necessary and helpful for determining appropriate search parameters. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court.

> **D.**     To the extent a party uses keyword search queries to reduce the population of documents for review and potential production, the queries will be conducted in a manner so as to ensure that hyphenation and stemming of terms will not reduce the number of responses to the search queries (*e.g.*, a query for "all-inclusive index" will return documents containing either "all-inclusive index", "all-inclusive index.", "all inclusive index", or "all inclusive index"; and "complet*" will return "complete", "completes", "completed", "completing", or "completion"). Any terms intended to be searched with stemming shall be reflected by adding an asterisk (*) (or similar applicable search operator) to the term at the point where stemming should begin. All queries, to the extent used, will be run in a non-case sensitive manner.

**E.**     The producing party may not substitute electronic search protocols for its obligation under applicable rules to otherwise make a reasonable and diligent search for responsive documents. For example, if the producing party keeps a file of documents that it knows is intended to primarily hold documents that would likely be directly responsive to a discovery request, it must search the entire file and, to the extent reasonable and proportional to the needs of the case, will not substitute such search with an electronic search term query.

**F.**     No party shall use predictive coding/technology-assisted-review for the purpose of culling the documents to be reviewed or produced without notifying the opposing party prior to use and with ample time to meet and confer in good faith regarding the use of such technologies.

**G.**     The Parties agree that productions shall be made on a rolling basis. The Parties further agree to meet and confer over the timing and order of production, including whether certain categories of documents or custodians can be prioritized.

**H.**     The Parties will continue to meet and confer regarding any issues concerning the search protocol employed to collect documents for review, as necessary and appropriate. Nothing in this protocol, or the subsequent designation of any search terms, shall operate to limit a party's production obligations under applicable law, or limit the ability to agree to meet and confer to modify the search terms, criteria, or methodologies as information is obtained and utilized in the course of the litigation

**I.**     This ESI Protocol does not address or resolve any other objection to the scope of the Parties' respective discovery requests.

**J.**     Nothing in this order shall constitute a waiver of any Party's right to seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed-to search terms, techniques, or tools.

IV.     **FORMAT OF PRODUCTION**

A.     **General Production Formats.** ESI that can be readily converted to tagged image file format ("TIFF") images will be produced as TIFF images pursuant to this order except as set forth below. ESI will be produced with the agreed-upon Metadata fields, except where this is not practicable. In this event, the producing party will promptly notify the requesting party of the issue, and the Parties will attempt to agree upon an alternative format that is acceptable to the requesting party.

1.     Word or Wordperfect (or other word processing format) documents will be produced in TIFF format with track changes, comments, and any other markup displayed. Objects embedded in Microsoft Word and .RTF documents, which have been embedded with the "Display as Icon" feature, will be extracted as separate documents and treated like attachments to the document where reasonably possible.  Other objects embedded in word processing documents shall be extracted and produced as separate files maintaining a parent-child relationship. The Producing Party will also instruct its vendor to force off Auto Date features.

2.     PDF documents will be produced in TIFF format with hidden information, comments, notes, and any other markup displayed.

3.     Excel (or other spreadsheet format) documents will be produced in native format. Native Excel files will be redacted where appropriate by use of native redaction software, or if use of such software is not proportional, by overwriting the data contained in a particular cell, row, column or tab with the word "REDACTED." These documents will be identified as "Redacted" within the "REDACTED" field in the .DAT. If the act of redacting one or more cells will result in the alteration of the contents of any other cell, document will be identified as "Redacted-Altered." The receiving party may object, and the Parties shall meet and confer on the subject. If the

producing party deems it necessary to produce redacted Excel (or other spreadsheet formats) in any format other than Native, the Parties should meet and confer before such a production is made.

       4.     PowerPoint (or other presentation format) documents will be produced in native format. Native PowerPoint presentations that require redactions shall be produced as TIFF images, which shall include speaker notes and "hidden" slides as extracted by the software used to process the documents. Color PowerPoint presentations requiring redactions shall be converted to color images, and black and white PowerPoint presentations requiring redactions shall be converted to black and white TIFF images, provided that proper grayscale printing is enabled to ensure that any dark colored text is not hidden by dark objects/drawings around the text. These documents will also be identified as "Redacted" within the "REDACTED" field in the .DAT. If the PowerPoint or slide program contains video or audio components, the video or audio will be produced as separate native files with the appropriate attachment relationships.

       5.     The receiving party may request that any document(s) produced as a TIFF document to be produced in native format upon good cause shown, including where TIFF format does not adequately reflect the contents of the document, which request will not be unreasonably denied.  The receiving party must identify the document(s) at issue and the basis for its request. To the extent the receiving party believes that the issues necessitating the native production of a particular document apply more broadly to certain categories of documents, the parties agree to meet and confer regarding the native production of that category of documents.  Except as otherwise provided herein, the receiving party shall not make a "blanket" request for re-production pursuant to this paragraph.  The parties agree to meet and confer within five (5) business days as to any dispute regarding requests for native production of documents otherwise produced only as TIFF files, before the issue is submitted to the court.

6.      If a document is converted from native format to any other format as provided herein, the producing party shall extract and produce the agreed-upon metadata from the original native file along with the additional metadata fields as described below in Section IV.K, including the hash value for the original file.

**B.      Production Specifications.**

1.      **Native Productions.** All native productions shall be produced in such a way so as to identify and/or maintain the file structure of the data being produced. This shall be accomplished by providing a load file identifying the agreed upon metadata in Section IV.K. Said load files shall be consistent with industry standard Concordance load files such as .DAT files and .OPT files. If documents that the Parties have agreed to produce in native format per this protocol are to be used at depositions or attached to pleadings or papers filed with the Court, the party offering the native document must identify the document as native format and provide the slip sheet provided by the producing party for each native file including Bates stamp, Protective Order designation, as appropriate, and agreed upon metadata fields. A slipsheet shall be produced for all native files at the time of their production, including Bates stamp, Protective Order designation, and agreed upon metadata fields. The Parties shall include the following metadata fields, as set forth in Section IV.K, on the native file slipsheet: BegDoc, EndDoc, BegAttach, EndAttach, Attachment Count, Author, Custodian, All Custodians, DateCreated, TimeCreated, DateLastMod, TimeLastMod, FileName, File Path / Original Path, DUPLICATE CUSTODIAN_SOURCEFILEPATHS.

2.      **Image Productions.**

a.      **Physical Documents.** Documents or records that either (i) were originally generated as ESI but now only exist in physical hard-copy format, or (ii) documents or records that were originally generated in hard-copy format, shall be produced as single page TIFF files

along with an OCR acquired text file containing page break indications where available and the agreed upon metadata fields listed in Section IV.K below. Any settings such as "auto-skewing", "auto-rotation" and the like should be turned on when documents are run through the process. In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized). Parent-child relationships (the association between attachments and their parent documents) shall be preserved. In the case of an organized compilation of separate documents -- for example, a binder containing several separate documents behind numbered tabs -- the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields. Original document orientation shall be maintained (*i.e.,* portrait to portrait and landscape to landscape).  If, upon review, the requesting party deems the image or text quality of a specific hard-copy document to be insufficient, this will be brought to the attention of the producing party, and the Parties will meet and confer within five (5) business days of being notified of the issue before submitting the issue to the Court.

b. **ESI**. For ESI produced as TIFF images, native format files shall be converted to single-page TIFF images and such images shall be OCR'd. Accompanying the TIFF images shall be a multipage text (.TXT) file containing searchable text from the native file, and the metadata discussed in Section IV.K below. Load files for the TIFF images should be created and produced together with their associated TIFF images to facilitate the use of the produced images by a document management or litigation support database system.

C.      **Duplicates**. The Parties are not required to produce exact duplicates of electronic documents stored in different locations. The Parties may globally de-duplicate identical ESI, which will be determined as follows:

1.      ESI will be de-duplicated based upon calculated MD5 or SHA 1 Hash values for the entire file contents. File contents only will be used for MD5 or SHA 1 Hash value calculation and will not include operating system metadata (e.g., filename, file dates) values.

2.      Removal of duplicate documents should be done for exact duplicate (not "near duplicate") documents (based on MD5 or SHA 1 Hash values at the parent document level plus family level for Messaging materials) and may be done across custodians.

3.      If a Party de-duplicates identical ESI, such Party shall populate a "Duplicate Custodian" and "All Custodian" field of data that identifies each custodian who had a copy of the produced document; such de-duplicated documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in this litigation, including for use at deposition and trial. A Producing Party shall use a uniform description of a particular custodian across productions. The Parties will also provide custodian associations in an overlay file, including fields BegDoc, All Custodians, and DUPLICATE CUSTODIAN_SOURCEFILEPATHS as listed in Section IV.K, with Concordance standard delimiters that include duplicate custodian name information in prior productions as well as any custodians newly identified in the associated production. The overlay files shall be produced after every associated production, and shall be regularly updated, if necessary, to account for rolling productions.  The parties shall not be required to produce or update overlay files if there is no additional information to be provided or updated in connection with the pre-existing productions and related overlay files.

4.      **Threading.** The Producing Party will not withhold documents on the basis of email threading.

D.      **Color.** The Producing Party may produce TIFF images in black and white, except for documents for which the associated native version contains track changes, which shall be produced as color TIFF images.   If, upon review, the requesting party seeks a color version of a specific document, this will be brought to the attention of the producing party, and the Parties will meet and confer within five (5) business days of being notified of the issue before submitting the issue to the Court.

E.      **System Files.** Electronic file collection will be "De-NISTed", removing commercially available operating system and application files contained on the National Institute of Standards and Technology ("NIST") file list. Identification of NIST list matches will be through MD5 or SHA 1 Hash values.

F.      **Time Zone.** When processing ESI, UTC -5 should be selected as the time zone.

G.      **Archive File Types.** Archive file types (e.g., .zip, .rar) shall be uncompressed for processing. Each file contained within an archive file shall be produced, and the reference to the parent archive file will be provided in the child file name. If the archive file is itself an attachment, that parent/child relationship shall also be preserved.

H.      **Bates Numbering and Other Unique Identifiers.** Documents produced in native format will be identified with a Bates number, and the original file name will be identified in the load file, except in the event that such file name is subject to a claim of privilege. For image files (i.e. TIFF images), each page of a produced document shall have a Bates Number electronically stamped onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with. All files and documents that are replaced for any reason

shall be identified with a "-R" designation appended to the original production number. There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of a Protective Order entered by this Court in this litigation, or has been redacted in accordance with applicable law or Court order. In the case of confidential materials as defined in the Protective Order, or materials redacted in accordance with applicable law or Court order, a designation may be electronically stamped onto the document's image at a location that does not obliterate or obscure any information from the source document, other than material being redacted.

     **I.**     **Production Media.** Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), such other readily accessible computer or electronic media as the parties may hereafter agree upon, or electronically via secure file share/FTP (the "Production Media"). Each item of Production Media shall be accompanied by: (1) the name of the producing party; (2) a legend identifying the production as being made for this case; (3) the production date; (4) a unique production volume, starting with the same Bates prefix used on the documents being produced; and (5) the Bates number range of the materials contained on such Production Media item, or other description of the items. Each production shall be accompanied by a Production Letter setting forth the date and scope of production and, where applicable, the instructions for any replacement productions.

     **J.**     **Electronic Text Files.** For each document, a single text file (.TXT) shall be provided along with the native or image files and metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text shall be extracted directly from the native electronic file unless the document was redacted, an image file, or a physical file. In these instances

a text file created using OCR will be produced in lieu of extracted text. Where feasible, if the Producing Party has access to extracted text from electronic document files, the Receiving Party shall receive extracted text as well, instead of OCR text generated from an image file. If such conversion is unduly burdensome or renders the document unusable, the Producing Party may produce the document in any reasonably usable form as may be agreed upon by the respective parties. The Parties shall meet and confer regarding any disputes relating to the availability of extracted text.

     **K.**    **Metadata.** The following list identifies the metadata fields and manually generated fields that will be included in Load files, to the extent applicable:

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files / Attachments) |
|---|---|---|---|---|
| BegDoc | Unique ID (Bates number in format e.g., AB0000001) | Paragraph | The Document ID number associated with the first page of an email. | The Document ID number associated with the first page of a document. |
| EndDoc | Unique ID (Bates number in format e.g., AB0000005) | Paragraph | The Document ID number associated with the last page of an email. | The Document ID number associated with the last page of a document. |
| BegAttach | Unique ID (Bates number in format e.g., AB0000001) Parent-Child Relationships | Paragraph | The Document ID number associated with the first page of a parent email. | The Document ID number associated with the first page of a parent document. |
| EndAttach | Unique ID (Bates number in format e.g., AB0000012) Parent-Child Relationship | Paragraph | The Document ID number associated with the last page of the last attachment to a parent email. | The Document ID number associated with the last page of the last attachment to a parent document. |

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files / Attachments) |
|---|---|---|---|---|
| Attachment Count | | | | Indicates the number of attachments to the parent document |
| Email Conversation Index / Thread Text | | | ID used to tie together email threads. | |
| Pages | Pages | Number | The number of pages for an email. | The number of pages for a document. |
| DateSent | | Date (MM / DD / YYYY format) | The date the email was sent. | For email attachments, the metadata associated with the attachment native file, where available, otherwise no metadata. |
| TimeSent | | Time (HH:MM in Coordinated Universal Time (UTC)) | The time an email was sent. | For email attachments, the metadata associated with the attachment native file, where available, otherwise no metadata. |
| Author | Author Display Name (e-mail) | Paragraph | The display name of the author or sender of an email. | The name of the author as identified by the metadata of the document. |
| To | Recipient | Paragraph | The display name of the recipient(s) of an email. | The display name of the recipient(s) of a document (e.g., fax recipients). |
| CC | CC | Paragraph | The display name of the copyee(s) of an email. | |

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files / Attachments) |
|---|---|---|---|---|
| BCC | BCC | Paragraph | The display name of the blind copyee(s) of an email. | |
| Subject | Subject (e-mail) | Paragraph | The subject line of an email. | The subject of a document from entered metadata. |
| Custodian | Custodian | Paragraph | The custodian of an email. | The custodian of a document. |
| All Custodians | All Custodians | Paragraph | The custodian(s) whose files contained the same email but whose copy of that email was removed from production during the de-duplication process. | The custodian(s) whose files contained the same document but whose copy of that document was removed from production during the de-duplication process. |
| DateCreated | | Date (MM / DD / YYYY format) | | The date a document was created. |
| TimeCreated | | Time (HH:MM in Coordinated Universal Time (UTC)) | | The time a document was created. |
| DateLastMod | | Date (MM / DD / YYYY format) | | The date a document was last modified. |
| TimeLastMod | | Time (HH:MM in Coordinated Universal Time (UTC)) | | The time a document was last modified. |
| FileName | | | | File name of the original file name. |

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files / Attachments) |
|---|---|---|---|---|
| FileExt | | Paragraph | The file extension of the document is defined as the substring of the file name which follows but does not include the last occurrence of the dot character. | The file extension of the document is defined as the substring of the file name which follows but does not include the last occurrence of the dot character. |
| File Path / Original Path (to the extent available) | | E.g., Joe Smith/E-mail/Inbox Joe Smith/E-mail/Deleted Items | Location of the original document / location in the ordinary course of business. This field should be populated for email and e-files. | Location of the original document / location in the ordinary course of business. This field should be populated for email and e-files. |
| DUPLICATE CUSTODIAN_ SOURCEFILEP ATHS | | | Location of copies of file(s) that was (were) removed from production during the de-duplication process. | Location of copies of file(s) that was (were) removed from production during the de-duplication process. |
| MD5HASH or SHA1HASH | | | The MD5 or SHA 1 Hash value or de-duplication key assigned to a document. | The MD5 or SHA 1 Hash value or de-duplication key assigned to a document. |
| REDACTED | | Paragraph | Identifies if an email has been redacted in full or part. | Identifies if a document has been redacted in full or part, or if an Excel file has been manually redacted resulting in another field altered. |
| NATIVE LINK | | E.g., D:\NATIVES\ ABC00001.xls | The full path to a native copy of a document. | The full path to a native copy of a document. |

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files / Attachments) |
|---|---|---|---|---|
| FULLTEXT | | E.g., D:\TEXT\ABC00001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

Such metadata fields will be produced to the extent available, except that they may be suppressed or redacted if they contain privileged information. The Parties agree to meet and confer if additional fields of metadata are needed.

     **L.**    **Attachments**. Email attachments and embedded files will be mapped to their parent by attachment range within the Load file.

     **M.**    **Structured data**. In the event that a response to discovery requires production of discoverable electronic information contained in a database or other structured data, the Parties will meet and confer as needed to develop an understanding of which fields and information are

relevant and agree upon a set of queries to be made for discoverable information. No parties shall produce any structured data in a format that was not agreed upon by the parties.

      **N.**     **Data Security**. The Parties will ensure that third-party vendors hosting data produced in this litigation shall maintain the appropriate level of data security in an effort to prevent a security breach of protected or proprietary information, and pursuant to the Protective Order.

## V.    OBJECTIONS TO ESI PRODUCTION

      **A.**     If any formatting requirements or other specifications agreed to in this protocol are later determined by the producing party to be not feasible, or unduly burdensome or unreasonably costly, the Parties will promptly meet and confer in order to attempt to agree upon appropriate modifications to the protocol before presenting any such issue to the Court.

      **B.**     Notwithstanding anything contained herein to the contrary, a producing party shall not produce ESI in a format not requested or agreed to by the requesting party. If an issue arises, the issue will only be submitted to the Court after reasonable efforts by the Parties to reach agreement by the meet and confer process.

## VI.    PRIVILEGE AND WORK PRODUCT CLAIMS

      **A.**     Except as otherwise provided in Section VI.E, the Parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege or the work product doctrine and/or any other applicable privilege, the producing party will provide an updated log with each production of privileged material, in an electronically searchable format (e.g., Excel), containing, for each document claimed as privileged, and as required by applicable law, including Fed. R. Civ. P. 26(b)(5)(A), a description of "the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim," as well as

an export of the metadata fields listed below (with the exception that the field "Subject" may be redacted for privilege):

- BegDoc

- EndDoc

- BegAttach

- EndAttach

- Attachment Count

- Custodian

- All Custodians

- From

- To

- CC

- BCC

- Subject

- DateSent

- FileName

- Author

- DateCreated

- FileType

- Priv_Claim

**B.**     The log will also identify attorney(s) with an asterisk next to each such attorney's name, and will include a field indicating which privilege is being asserted.

**C.**     Each document withheld by a Party pursuant to a claim of privilege will be logged separately, including entire families of documents being withheld on a claim of privilege. In the

event a family of documents contains both privileged and non-privileged information, the parties agree that the privileged documents in the family may be replaced in the production with a slip-sheet indicating "Privileged Document Withheld." The withheld document will be logged and the remaining non-privileged family will be produced. The Bates number of the slip-sheet for the document withheld in this manner will be provided on the privilege log. Parties wishing to challenge any document withheld in this manner shall do so in accordance with the terms of the Protective Order. (ECF No. 87.)

D.      Neither attorney work product prepared in anticipation of this litigation, nor documents consisting of communications with in-house or outside counsel after the date the action was commenced need to be logged.

E.      The Parties agree that documents redacted from production on the basis of privilege need not be separately logged so long as: (1) the producing party indicates the nature of the privilege claim (i.e., Attorney-Client, Work Product) in searchable text within the redaction box; (2) all other information that would otherwise be required to be provided in a log under Section VI.A is apparent from the face or metadata of the document; and (3) all other non-privileged information and information necessary to allow the requesting party to assess the validity of any redactions is provided. If, upon review, the requesting party is unable to discern the basis for such a privilege claim from the information provided on the face of the document, the requesting party may request log entries, which shall be provided within ten (10) business days of the request, or additional information for such documents, pursuant to the process outlined in Paragraph F, below.

F.      If the requesting party requires further information concerning a claim of privilege, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information. Within twenty-one (21) days

of such a request, the producing party must either (i) provide the requested information or (ii) oppose the request. Either party may seek to expedite this time period upon good cause shown. If a party opposes a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution.

      **G.**    For documents that have been redacted on the basis of a claim of privilege, the Producing Party will identify such documents as "Redacted" within the "REDACTED" field in the .DAT.

      **H.**    The inadvertent production of privileged or protected documents or information shall be governed by the Protective Order entered by the Court in this litigation.

## VII.    AMENDMENTS TO THE ESI PROTOCOL

      No modifications or amendments to the ESI Protocol shall be made except upon the consent of the Parties or, in the event the Parties cannot reach agreement, the filing of a formal motion and a showing of good cause, or as otherwise ordered by the Court.

Dated: August 26, 2020

Respectfully submitted,

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (#3569)
**DELEEUW LAW LLC**
1301 Walnut Green Road
Wilmington, Delaware 19807
(302) 274-2180
brad@deleeuwlaw.com

*Liaison Counsel for Lead Plaintiff the Public Employees' Retirement System of Mississippi and the Proposed Class*

Sharan Nirmul (#4589)
Michelle M. Newcomer
Jonathan F. Neumann
Mark C. Franek
Raphael Janove
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**

*/s/ Katharine L. Mowery*
Samuel A. Nolen (#971)
Katharine L. Mowery (#5629)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
nolen@rlf.com
mowery@rlf.com

Of Counsel:

Douglas P. Baumstein
Claudine Columbres
Susan L. Grace
Camille M. Shepherd
**WHITE & CASE LLP**
1221 Avenue of the Americas

280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706
snirmul@ktmc.com
mnewcomer@ktmc.com
jneumann@ktmc.com
mfranek@ktmc.com
rjanove@ktmc.com

Stacey M. Kaplan
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
One Sansome Street, Suite 1850
San Francisco, California 94104
(415) 400-3000
skaplan@ktmc.com

*Lead Counsel for Lead Plaintiff the Public*
*Employees' Retirement System of Mississippi*
*and the Proposed Class*

Blake A. Tyler
**GADOW TYLER, PLLC**
511 E. Pearl Street
Jackson, Mississippi 39201
(601) 355-0654
blake@gadowtyler.com

*Additional Counsel for Lead Plaintiff the*
*Public Employees' Retirement System of*
*Mississippi*

New York, New York 10020
(212) 819-8200
dbaumstein@whitecase.com
ccolumbres@whitecase.com
susan.grace@whitecase.com
camille.shepherd@whitecase.com

*Counsel for Defendants Advance Auto Parts,*
*Inc., Thomas R. Greco, and Thomas Okray*

**IT IS SO ORDERED** this  27  day of  August   , 2020.

                                     /s/ Richard G. Andrews
                              The Honorable Richard G. Andrews
                                  United States District Judge

**APPENDIX 1: FILE FORMATS**

**A.      Image Load Files**

- Every document referenced in a production image load file shall have all corresponding images, text, and data logically grouped together.

- The name of the image load file shall mirror the name of the delivery volume; and should have an .lfp, .opt or .dii extension (e.g., ABC001.1fp).

- The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.).

- The image load file shall contain one row per TIFF image.

- Every image in the delivery volume shall be contained in the image load file.

- The image key shall be named the same as the Bates number of the page.

- Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.), i.e., a separate volume shall be created for each piece of media delivered.

**B.      Metadata Load Files**

- The metadata load file shall use the following delimiters:

  - Column Delimiter: Pilcrow - ¶ (ASCII :020)

  - Text Qualifier: Thorn – þ (ASCII :254)

  - New line: Registered sign - ® (ASCII :174)

- The first record shall contain the field names in the order of the data set forth in Section IV.K above.

- Metadata fields that are not applicable to a document shall be filled with two adjacent text delimiters.

- All date fields shall be produced in "mm/dd/yyyy" format.

- A carriage-return line-feed shall be used to indicate the start of the next record.

- Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume shall be created for each piece of media delivered.

- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat, .csv, or .txt extension (i.e., ABC001.dat).

- The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.).

- The .dat and .txt files shall be encoded in UTF-8 or UTF-16 coding as appropriate, preserving the integrity and full character set in use for any non-English text.

## APPENDIX 2

1.      Deleted, slack, fragmented, or other data only accessible by forensics.

2.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.      On-line access data such as temporary internet files, history, cache, and cookies.

4.      Data in metadata fields that are frequently updated automatically, such as last opened dates.

5.      Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6.      Voice messages, provided that a copy of such messages is routinely saved elsewhere (e.g., as an email message and on such server).

7.      Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging, provided that a copy of such messages is routinely saved elsewhere.

8.      Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail or pin-to-pin messages is routinely saved elsewhere.

9.      Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10.     Logs of calls made from mobile devices.

11.     Server, system or network logs.

12.     Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13.     Data remaining from systems no longer in use that is unintelligible on the systems in use.