**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE ADVANCE AUTO PARTS, INC. SECURITIES LITIGATION | Case No. 18-CV-00212-RTD-SRF <br><br> CLASS ACTION |

**CLASS REPRESENTATIVE'S BRIEF IN SUPPORT OF ITS UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AND
AUTHORIZATION TO DISSEMINATE NOTICE OF SETTLEMENT**

Sharan Nirmul (#4589)
Jamie M. McCall
Jonathan F. Neumann
Austin W. Manning
**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706
snirmul@ktmc.com
jmccall@ktmc.com
jneumann@ktmc.com
amanning@ktmc.com

-and-

Stacey M. Kaplan
**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
One Sansome Street, Suite 1850
San Francisco, California 94104
(415) 400-3000
skaplan@ktmc.com

*Class Counsel for Class Representative the
Public Employees' Retirement System of
Mississippi and the Class*

[Additional counsel on signature page]

Date:  December 23, 2021

P. Bradford deLeeuw (#3569)
**DELEEUW LAW LLC**
1301 Walnut Green Road
Wilmington, Delaware 19807
(302) 274-2180
brad@deleeuwlaw.com

*Liaison Counsel for the Class*

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................ 3

    A.  Overview of the Action............................................................................ 3

    B.  Settlement Negotiations and Terms of the Proposed Settlement............................ 5

III.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................ 7

    A.  Standards Governing Approval of Class Action Settlements ................................ 7

    B.  The Court "Will Likely Be Able to" Approve the Proposed Settlement ................ 8

        1.  "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2) .................. 8

        2.  The Settlement's Terms Are Adequate .................................................... 10

            a.  The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation........... 10

            b.  The Proposed Settlement Does Not Unjustly Favor Any Class Member ...................................................................................... 14

            c.  The Anticipated Request for Attorneys' Fees is Reasonable........ 15

            d.  Class Representative Has Identified All Agreements Made in Connection with the Settlement .................................................... 16

IV.  THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD FOR DISSEMINATING NOTICE TO THE CLASS .................................................... 17

V.  PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ........................ 20

VI.  CONCLUSION................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aetna, Inc. Sec. Litig.*,
    617 F.3d 272 (3d Cir. 2010)................................................................11, 12

*Alves v. Main*,
    2012 WL 6043272 (D.N.J. Dec. 4, 2012), *aff'd* 559 App'x 151 (3d. Cir. 2014) ....................9

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)................................................................13

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................ 12-13

*In re DVI, Inc. Sec. Litig.*,
    2016 WL 1182062 (E.D. Pa. Mar. 28, 2016)..........................................................18

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010)................................................................7

*Fishoff v. Coty Inc.*,
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011)....................12

*In re Gen. Instrument Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) ........................................................15

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)................................................................15

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)................................................................8

*Good v. Nationwide Credit, Inc.*,
    314 F.R.D. 141 (E.D. Pa. 2016)................................................................ 18-19

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ........................................................17

*In re Horsehead Holding Corp. Sec. Litig.*,
    2021 WL 2309689 (D. Del. June 4, 2021)................................................................16, 20

*In re Ins. Brokerage Antitrust Litig.*,
    297 F.R.D. 136 (D.N.J. 2013)................................................................ 15-16

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)..................................................................................17

*Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) .........................................9

*In re Par Pharm. Sec. Litig.*,
    2013 WL 3930091 (D.N.J. July 29, 2013)...........................................14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)....................................................................8

*Saunders v. Berks Credit & Collections, Inc.*,
    2002 WL 1497374 (E.D. Pa. July 11, 2002)..........................................9

*Shapiro v. Alliance MMA, Inc.*,
    2018 WL 3158812 (D.N.J. June 28, 2018)...........................................10

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
    2017 WL 4167440 (E.D. Pa. Sept. 20, 2017) ......................................11

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004).....................................................................7

*In re Wilmington Tr. Sec. Litig.*,
    2018 WL 6046452 (D. Del. Nov. 19, 2018) .........................................16

## Statutes

15 U.S.C. § 78u-4(a)(4) .....................................................................................15

15 U.S.C. § 78u-4(a)(7) .....................................................................................19

15 U.S.C. § 78u-5(c) ..........................................................................................11

## Other Authorities

Fed. R. Civ. P. 23 ........................................................................................ *passim*

William B. Rubenstein, *Newberg on Class Actions* § 8:28 (5th ed. 2019)....................18

Court-appointed Class Representative the Public Employees' Retirement System of Mississippi ("Class Representative" or "Lead Plaintiff") respectfully submits this Brief in support of its unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rules"), for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order" or "PAO"), submitted herewith.[1]

## I.    INTRODUCTION

After more than three years of highly contested and vigorous litigation, Class Representative has agreed to resolve the Class's claims against Advance Auto Parts, Inc. ("AAP" or the "Company"), Thomas R. Greco, and Thomas Okray (collectively, "Defendants") for a $49,250,000 cash payment pursuant to the terms of the Stipulation. Class Representative now seeks the Court's preliminary approval of the Settlement so that notice of the Settlement can be provided to the Class and the Settlement Hearing can be scheduled.

Class Representative and Class Counsel believe that the Settlement—reached following well-informed, arm's-length negotiations facilitated by a well-respected mediator—provides an excellent benefit to the Class given the significant risks to proving liability and damages in this case. While Class Representative and Class Counsel believe the claims against Defendants in this Action are meritorious and supported by substantial evidence developed during discovery, they also recognize that, in the absence of settlement, they faced the significant risk that continued litigation might have resulted in a smaller recovery for the Class, or even no recovery at all. Indeed, at the time of settlement, several critical motions were pending before the Court, including

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated December 23, 2021 ("Stipulation"), attached as Exhibit 1 to the Declaration of Sharan Nirmul filed concurrently herewith ("Nirmul Declaration"). All internal citations, quotation marks, and footnotes have been omitted and emphasis has been added unless otherwise indicated.

1

Defendants' motion for reconsideration of the Court's motion to dismiss decision, Defendants' motion for summary judgment ("SJM"), and five *Daubert* motions. An adverse ruling for Class Representative on any of these motions could have ended the Action altogether or significantly impacted what evidence could be presented at trial.

When the Settlement was reached, the Parties were at an advanced stage of litigation, and Class Representative and Class Counsel were well-informed of the strengths and weaknesses of their case. Over the course of the Action, Class Representative and Class Counsel, *inter alia*: (i) conducted an extensive investigation, including interviews with former AAP employees; (ii) filed the detailed Amended Complaint; (iii) briefed oppositions to motions to dismiss; (iv) successfully moved for class certification and defeated Defendants' Rule 23(f) petition to the Third Circuit; (v) engaged in comprehensive fact and expert discovery, including taking or defending 26 depositions, reviewing over 1.3 million pages of documents produced by Defendants and various third parties, litigating six discovery-related motions, and exchanging opening, rebuttal, and reply reports for five merits experts; (vi) briefed Defendants' motion for reconsideration of the Court's ruling on their motion to dismiss; (vii) filed three motions to exclude the testimony of Defendants' experts; and (viii) were in the advanced stages of assembling an opposition to Defendants' SJM. Moreover, the Settlement is the product of arm's-length negotiations facilitated by David Murphy of Phillips ADR, including formal mediation and mediation briefing, and was ultimately reached following a mediator's recommendation accepted by both sides.

At the Settlement Hearing, the Court will have before it more extensive submissions in support of the Settlement, and will be asked to determine whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate. Entry of the Preliminary Approval Order will begin the process for consideration of final approval of the Settlement by, among other things:

(i) preliminarily approving the Settlement on the terms set forth in the Stipulation; (ii) approving the retention of Kurtzman Carson Consultants LLC ("KCC") as Claims Administrator; (iii) approving the form and content of the notices and Claim Form; (iv) approving the plan for disseminating notice of the Settlement to the Class; and (v) setting a date and time for the Settlement Hearing, as well as a schedule for related events and deadlines.

For the reasons herein, Class Representative respectfully submits that the Settlement warrants the Court's preliminary approval and respectfully requests the Court's entry of the Preliminary Approval Order.

## II.      FACTUAL BACKGROUND

### A.      Overview of the Action

This Action commenced on February 6, 2018, with the filing of the initial complaint against AAP and certain of its executives. D.I. 1. On November 2, 2018, the Court appointed the Public Employees' Retirement System of Mississippi as Lead Plaintiff and approved Kessler Topaz Meltzer & Check, LLP ("KTMC") as Lead Counsel. D.I. 44.

On January 25, 2019, Lead Plaintiff filed the Amended Complaint, asserting claims against Defendants as well as Starboard Value LP and Starboard's Chief Executive Officer (together, the "Starboard Defendants") under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10-5 promulgated thereunder. D.I. 46. The Amended Complaint alleged that, during the Class Period, Defendants made materially false and misleading statements and omissions regarding AAP's projected 2017 sales and operating margins by publishing guidance for the Company's financial performance ("FY17 Guidance") that lacked a reasonable basis. The Amended Complaint further alleged that once the relevant truth concealed by Defendants' false and misleading statements was revealed, AAP's common stock price declined, injuring the Class.

3

Defendants and the Starboard Defendants moved to dismiss the Amended Complaint on April 12, 2019. D.I. 56, 57. Following full briefing on the motions, the Court issued a Memorandum and Order on February 7, 2020 ("MTD Order") granting in part and denying in part Defendants' and the Starboard Defendants' motions to dismiss.[2] D.I. 73, 74. Defendants answered the Amended Complaint on March 18, 2020. D.I. 79. Thereafter, discovery commenced.

From February 2020 through September 2021, Class Representative and Class Counsel engaged in extensive fact and expert discovery, including, *inter alia*: (i) taking and/or defending 26 depositions; (ii) issuing 49 document requests to Defendants; (iii) serving 25 interrogatories on Defendants; (iv) serving approximately 16 subpoenas on third parties; (v) obtaining and reviewing over 1.3 million pages of discovery produced by Defendants and third parties; (vi) reviewing voluminous written discovery responses from Defendants; (vii) reviewing and producing over 60,000 pages of discovery from Class Representative, including extensive written discovery responses to document requests and interrogatories; (viii) reviewing and analyzing thousands of privilege log entries; and (ix) exchanging opening, rebuttal, and reply reports for two merits expert witnesses designated by Class Representative and three defense merits experts. The Parties also fully briefed six discovery-related motions. D.I. 165, 222, 245, 264, 281, 321.

Lead Plaintiff moved for class certification on May 15, 2020. D.I. 98. Following full briefing, the Court issued a Memorandum Opinion and Order on November 6, 2020 ("Class Certification Order"). D.I. 151, 152. By the Class Certification Order, the Court certified a class consisting of all persons and entities who purchased or otherwise acquired AAP common stock between November 14, 2016 and August 15, 2017, inclusive, and were damaged thereby,

---

[2]    By the MTD Order, the Court granted the Starboard Defendants' motion to dismiss (D.I. 57), dismissing all claims asserted against the Starboard Defendants without prejudice.

appointed Lead Plaintiff as Class Representative, and appointed KTMC as Class Counsel and deLeeuw Law LLC as Liaison Counsel. On November 20, 2020, Defendants filed a Rule 23(f) petition for permission to appeal the Class Certification Order to the Third Circuit, which Class Representative opposed. The Third Circuit denied Defendants' petition on January 12, 2021.[3]

On February 23, 2021, Defendants moved for reconsideration of the Court's MTD Order. D.I. 170. Defendants filed a renewed motion for reconsideration on March 15, 2021. D.I. 192. Defendants' renewed motion was fully briefed. D.I. 201. On October 15, 2021, Defendants filed their SJM. D.I. 289. On the same day, the Parties filed motions to exclude in whole or in part the testimony of each other's experts. D.I. 283, 286, 291, 302, 304.[4]

### B.    Settlement Negotiations and Terms of the Proposed Settlement

While certain motions were pending before the Court, the Parties began discussing the possibility of resolving the Action through settlement and scheduled a mediation with David Murphy of Phillips ADR on September 9, 2021. In advance of the mediation, the Parties exchanged detailed mediation statements addressing liability and damages issues. During the mediation, both sides made presentations based on the evidence developed in the case to the mediator and Defendants' insurer carriers. Although the Parties were unable to resolve the Action at the September 9, 2021 mediation, they agreed to continue discussions through Mr. Murphy. Following additional discussions facilitated by Mr. Murphy over the course of the next seven weeks, the Parties ultimately accepted a mediator's recommendation to settle for $49,250,000 in cash. The Parties' agreement was memorialized in a binding term sheet executed on November 5, 2021.

---

[3]    On May 27, 2021, Class Representative filed a motion to approve the form and manner of notice to the Class. D.I. 238. This motion was fully briefed and pending at the time of settlement.

[4]    On October 1, 2021, this Action was transferred from the Honorable Richard G. Andrews to the Honorable Robert T. Dawson for further proceedings.

Thereafter, the Parties negotiated the specific terms of their agreement to resolve the Action, executing the Stipulation on December 23, 2021. The Stipulation provides that Defendants shall pay or cause their insurance carriers to pay the Settlement Amount into an interest-bearing escrow account. The Settlement is not a claims-made settlement. The Class will receive the full benefit of the $49,250,000 cash payment net of Court-approved fees and expenses, and there will be no reversion of funds to Defendants or any other person or entity who or which paid any portion of the Settlement Amount once the Settlement becomes Final. *See* Stip., ¶¶ 1(dd); 14. Once the Settlement becomes Final, the Net Settlement Fund will be distributed among eligible Class Members who submit valid Claims in accordance with a Court-approved plan of allocation.

Upon the Effective Date of the Settlement, Class Members will release the "Released Class Claims" against Defendants and certain related persons and entities in exchange for the Settlement Amount and the right to participate in the Settlement. *See* Stip., ¶ 1(nn). The release's scope is reasonable as it is limited to claims related to the purchase, sale or other acquisition of AAP common stock during the Class Period, or to the allegations, transactions, facts, statements, matters or occurrences, representations or omissions involved, set forth, or referred to in the Amended Complaint. *Id*. This release is consistent with release provisions approved by courts in this District in securities class actions. *See, e.g.,* Stipulation of Settlement and Release and Order and Final Judgment, *Skeway, et al. v. China Natural Gas, Inc.*, No. 10-CV-728-RGA (D. Del. Jan. 29, 2016 & June 2, 2016), D.I. 124, ¶ 1.31 & D.I. 142; Stipulation and Agreement of Settlement and Order and Final Judgment, *Andavarapu v. iBIO, Inc., et al.*, No. 14-cv-1343-RGA (D. Del. Dec. 18, 2015 & Apr. 21, 2016), D.I. 54, § A.29 & D.I. 70.

## III.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.   Standards Governing Approval of Class Action Settlements

The Third Circuit has long favored settlement of class action litigation. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

Rule 23(e) requires judicial approval for a compromise of claims brought on a class-wide basis. Judicial approval of a class action settlement is a two-step process. *First*, the Court performs a preliminary review of the settlement to determine whether to grant preliminary approval and authorize plaintiffs to send notice of the proposed settlement to the members of the class. *See* Fed. R. Civ. P. 23(e)(1). *Second*, following distribution of notice, and after a hearing, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

With respect to the first step of the approval process, a court should grant preliminary approval and authorize notice of a settlement to the class upon a finding that it "*will likely be able*" to finally approve the settlement under Rule 23(e)(2).[5] In considering whether final approval is likely, courts consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

---

[5]   Where a class action is settled before a class is certified, at preliminary approval the court must also determine whether it "will likely be able" to certify the class for purposes of the settlement. *See* Rule 23(e)(1)(B). Here, however, the Class has already been certified so the Court need not make this determination.

Rule 23(e)(2).[6] Each of these factors counsels in favor of preliminary approval here.

### B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement

#### 1.    "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2)

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23(e)(2) advisory committee's note to 2018 amendments. To satisfy these factors, courts may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id*.

This Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2). *First*, as detailed above, the Parties have been vigorously litigating this Action since

---

[6]    In determining whether to grant final approval, the Court will also be asked to consider the following factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)—many of which overlap with the Rule 23(e)(2) factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." (Alterations omitted.)

In addition to the *Girsh* factors, the Third Circuit, at the final approval stage, also advises courts to address, where applicable, the following factors set forth in *In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998): (1) "the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;" (2) "the existence and probable outcome of claims by other classes and subclasses;" (3) "the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants;" (4) "whether class or subclass members are accorded the right to opt out of the settlement;" (5) "whether any provisions for attorneys' fees are reasonable;" and (6) "whether the procedure for processing individual claims under the settlement is fair and reasonable." *See also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments (noting that Rule 23(e)(2) factors are not intended to "displace any factor" previously adopted by the Court of Appeals, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

February 2018 and, at the time of settlement, the Parties had completed comprehensive fact and expert discovery and Class Representative was preparing its opposition to Defendants' SJM. Therefore, the Parties' settlement posture was informed by significant discovery and motion practice, detailed mediation briefing and presentations regarding the strengths and weaknesses of each side's case, full briefing on class certification and Defendants' Rule 23(f) petition, and consultation with experts on forecasting, market efficiency, materiality, causation, and damages. *See Saunders v. Berks Credit & Collections, Inc.*, 2002 WL 1497374, at *10 (E.D. Pa. July 11, 2002) (finding that "parties conducted adequate investigation and discovery to gain an appreciation and understanding of the relative strengths and weaknesses of the claims and defenses asserted," based on document discovery, briefing of motion to dismiss and motion for class certification, and settlement negotiations); *Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *3 (C.D. Cal. May 6, 2014) (parties sufficiently informed where "[a]ll discovery was completed at the time of the settlement"). Based on this informed understanding of the strengths and weaknesses of the Class's claims, Class Counsel believes that the Settlement is in the best interests of the Class and avoids the substantial risk that the Class could recover less than the Settlement Amount, or nothing, if the Action were to continue. *See Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 App'x 151 (3d. Cir. 2014) ("[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.").

*Second*, Class Counsel engaged in a rigorous negotiation process with Defendants' Counsel. The Parties' settlement negotiations were hard fought, and were facilitated by an experienced mediator. These negotiations included a formal mediation session before Mr. Murphy in early September 2021 and, at Mr. Murphy's direction, the preparation and exchange of comprehensive mediation statements and presentations by counsel of the evidence developed in

the case. The Parties' negotiations culminated in Mr. Murphy's issuance of a mediator's proposal that the Action be settled for $49,250,000, which the Parties accepted on November 4, 2021. *See id.* ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.").

*Finally*, throughout the Action and settlement negotiations, Defendants were aggressively represented by experienced counsel at White & Case LLP and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. Defendants were therefore equally well-informed regarding the case and their representation was no less rigorous than Class Counsel's representation of the Class. The fact that the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly-qualified mediator, supports preliminary approval. *See Shapiro v. Alliance MMA, Inc.*, 2018 WL 3158812, at *2 (D.N.J. June 28, 2018) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

### 2.     The Settlement's Terms Are Adequate

Rules 23(e)(C) and (D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Here, the Settlement represents a very favorable result for the Class in light of the risks of further litigation. Furthermore, Class Counsel, with the assistance of Class Representative's damages expert, has proposed a plan for allocating the Settlement proceeds that ensures all Class Members will be treated equitably relative to their respective losses.

### a.     The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor to be considered in assessing the approval of a class action settlement is the plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. The

10

Settlement provides for a certain, near-term cash recovery of $49,250,000 to be allocated among Class Members following the deduction of Court-approved fees and expenses. In comparison, if the Action had continued, Class Representative faced numerous factual and legal risks that could have precluded it from securing any recovery for the Class. While Class Representative remains confident in its ability to ultimately prove its claims, further litigation—including here, surviving Defendants' pending motions, including Defendants' motion for reconsideration and SJM, and winning at trial, and on the inevitable appeals to follow—was a risky proposition. *See, e.g.*, *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2017 WL 4167440, at *5-6 (E.D. Pa. Sept. 20, 2017) (approving settlement where "[e]stablishing liability would be difficult for the Class [and] [e]stablishing damages would also be no picnic" and finding "these factors weigh heavily in favor of approving the settlement").

To this day, Defendants adamantly deny any wrongdoing, and their pending SJM raises challenges to every single one of Class Representative's claims. If the Action continued, Class Representative would face significant risks to establishing Defendants' liability. For example, this case involved forward-looking statements, which are subject to the PSLRA safe harbor. 15 U.S.C. § 78u-5(c); *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 281 (3d Cir. 2010) ("Statements about future profitability and assumptions underlying management's expectations about the future fall squarely within the definition of forward-looking statement."). Under the PSLRA safe harbor, forward-looking statements are exempted from liability if they are identified as forward looking and accompanied by "meaningfully cautionary statements." *Id.* at 282. Thus, Defendants argued at summary judgment that their forward-looking statements were accompanied by ample, specific, cautionary language that the projections might not be met. Were Defendants successful on this argument, their forward-looking statements would have been exempted from liability entirely.

11

Even if Class Representative succeeded in convincing the Court that Defendants' statements were not accompanied by adequate cautionary language, however, the Class would still be required to prove the higher scienter standard applicable to forward-looking statements—that Defendants made their statements with "actual knowledge that the statement was false or misleading"—rather than the "recklessness" standard that typically applies in these securities fraud cases. *Id.* Defendants thus argued at summary judgment (and would argue to a jury) that Class Representative could not establish scienter because they did not know that their projections were unachievable at the time they were made. Rather, according to Defendants, the FY17 Guidance was the product of a sound, bottoms up forecasting process, and the Company only missed its projections because of unanticipated industry headwinds in 2017, which caused AAP and its competitors to miss sales projections by equal measure. Although Class Representative believes it had strong evidence and legal arguments to counter this narrative, to the extent Defendants' arguments were successful, they would have significantly reduced, or curtailed entirely, the Class's ability to recover damages. *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim").

Even if Class Representative prevailed in proving Defendants' liability, this Action also involved significant risks to establishing loss causation and damages. Throughout the Action, Defendants vigorously asserted that the price declines in AAP common stock on the corrective disclosure dates were unrelated to the alleged fraud. Defendants asserted, among other things, that Class Representative would be unable to prove loss causation because the stock price declines were instead the result of "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events." *Dura Pharms., Inc. v. Broudo*,

12

544 U.S. 336, 343 (2005). Most significantly, Defendants argued that industry-specific headwinds were the main, if not the only, reason for the forecasting misses and resulting stock price declines. Ultimately, resolution of these issues would come down to a "battle of the experts" with no guarantee as to which expert's testimony or methodology would be more compelling to a jury. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a battle of experts . . . with no guarantee whom the jury would believe").

Class Representative's damages expert has estimated maximum aggregate Class damages in this Action to be approximately $669 million. This number assumes that Class Representative would have prevailed on every aspect of its case including establishing liability for all of Defendants' alleged misstatements and recovering the entirety of the abnormal stock price returns on the corrective disclosure dates. As discussed above, however, Class Representative faced significant risks in proving liability, loss causation, and damages. For example, if Defendants succeeded in having even one of the two corrective disclosures dismissed at summary judgment, or in proving that Class Representative's expert had not adequately disaggregated the price impact of any impact from the industry downturn, the Class's estimated aggregate damages would have been substantially reduced. Moreover, if Class Representative was unable to prove liability for the November 14, 2016 alleged misstatement, the Class Period would have been shortened and the Class's estimated aggregate damages would have been necessarily reduced. The Settlement reflects Class Representative's informed assessment of the risks of these scenarios to any recovery the Class could achieve had this case proceeded through summary judgment and trial. Thus, the Settlement provides a substantial recovery given the risks and this supports its approval.

13

**b.      The Proposed Settlement Does Not Unjustly Favor Any Class Member**

The Court must also ultimately assess the Settlement's effectiveness in distributing relief to the members of the Class. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, too, the Court can readily find the Settlement will likely earn approval. The proposed Plan of Allocation ("Plan") provides for a straightforward and effective means of distributing the Net Settlement Fund to the Class, and "treats [C]lass [M]embers equitably relative to each other." *See* Fed. R. Civ. P. 23(e)(2)(D); *see also In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *8 (D.N.J. July 29, 2013) ("The proposed allocation need not meet the standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis.").

The Settlement will be effectuated with the assistance of an experienced claims administrator, KCC. KCC will employ a standard and well-tested protocol for processing claims in securities class actions. Namely, potential Class Members will submit Claims, either by mail or online and, based on the information submitted, KCC will determine each Claimant's eligibility to participate in the Settlement by calculating their respective "Recognized Claim" under the Plan. *See* Stip., ¶¶ 22-26. Claimants will be notified of (and given the chance to remedy) any defects in their Claims and will also have the opportunity to contest any rejection of their Claims. *Id.*, ¶ 26(d)-(e). Any Claim disputes that cannot be resolved will be presented to the Court. *Id.*, ¶ 26(e).

The Plan provides for distribution of the Net Settlement Fund to Class Members whose Claim shows a loss on purchases/acquisitions of AAP common stock during the Class Period. The formula to apportion the Net Settlement Fund—developed in consultation with Class Representative's damages expert—is based on the estimated artificial inflation in the price of AAP common stock over the course of the Class Period that was allegedly caused by Defendants'

14

alleged misconduct. Further, the Plan apportions the Net Settlement Fund among Class Members based on when they purchased, acquired, and/or sold their AAP common stock, and was created without consideration of Class Representative's individual transactions.[7] This method ensures Class Members' recoveries are based upon the relative losses they sustained, and eligible Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner. *See In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares"). Accordingly, the Plan applies in an equitable manner to all Class Members and this further weighs in support of preliminary approval here.[8]

### c.    The Anticipated Request for Attorneys' Fees is Reasonable

The Postcard Notice and Notice provide that Class Counsel, on behalf of Plaintiffs' Counsel, will apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund. A 25% fee is eminently reasonable here and in line with fee percentages that courts in this Circuit approve in securities class actions. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (observing fee awards generally range from 19% to 45% of the settlement fund); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J.

---

[7]    As set forth in the Notice, based on Class Representative's damages expert's estimate of the number of shares of AAP common stock that may have been affected by the alleged misconduct, and assuming that all Class Members elect to participate in the Settlement, the estimated average recovery (before deduction of Court-approved fees, expenses, and costs) per eligible share of AAP common stock is approximately $2.38.

[8]    The Notice also explains that Class Counsel's request for Litigation Expenses may include a request for reimbursement of Class Representative's reasonable costs and expenses directly relating to its representation of the Class, as permitted by the PSLRA. 15 U.S.C. § 78u-4(a)(4) (allowing the "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.").

2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery").
Moreover, there is ample precedent for granting fees of 25% (or greater) in securities class actions
in this District. *See, e.g., In re Horsehead Holding Corp. Sec. Litig.*, 2021 WL 2309689, at *3 (D.
Del. June 4, 2021) (awarding one-third of $14.75 million); Order, *In re Envision Healthcare Corp.*,
No. 18-cv-01068 (D. Del. Feb. 16, 2021), D.I. 105 at 1  (awarding one-third of $17.4 million);
Order, *San Antonio Fire and Police Pension Fund et al. v. Dole Food Co., Inc.*, No. 15-cv-1140-
LPS (D. Del. July 19, 2017) D.I. 100 at 2 (awarding 25% of $74 million).

Class Counsel will also seek expenses incurred during the Action, in an amount not to
exceed $2.4 million. These expenses include, *inter alia,* expert fees, costs to host the database that
enabled Class Counsel to effectively and efficiently search and review the over 1.3 million pages
of documents produced by Defendants and third parties in the Action, court reporter fees, research
costs, and the cost of formal mediation with Mr. Murphy. *See In re Wilmington Tr. Sec. Litig.*,
2018 WL 6046452, at *10 (D. Del. Nov. 19, 2018) (approving $6,790,044.82 in expenses related
to "the management of documents, expert fees, computerized research, photocopying, transcripts,
postage, travel, and discovery expenses"). Further, Class Members will have an opportunity to
weigh in on Class Counsel's fee and expense request before the Settlement Hearing. Thus, this
factor also supports approval here.

### d.    Class Representative Has Identified All Agreements Made in Connection with the Settlement

In connection with the Settlement, the Parties have entered into a confidential
Supplemental Agreement regarding requests for exclusion, dated December 23, 2021
("Supplemental Agreement"). *See* Stip., ¶ 37. Pursuant to the Supplemental Agreement,
Defendants shall have the option to terminate the Settlement in the event that requests for exclusion
from the Class exceed certain agreed-upon conditions stated in the Supplemental Agreement. This

type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

As is standard practice in securities class actions, the Supplemental Agreement is not being made public in order to avoid incentivizing the formation of a group of opt outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Class. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and Term Sheet (as noted above) are the only agreements concerning the Settlement entered into by the Parties.

## IV.   THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD FOR DISSEMINATING NOTICE TO THE CLASS

Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Moreover, notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

As outlined in the Preliminary Approval Order, if the Court grants preliminary approval, KCC will mail the Postcard Notice to all Class Members who can be identified through reasonable effort, including through a list of record holders to be provided by Defendants.[9] To disseminate

---

[9]      Class Representative also requests the Court's approval of its retention of KCC as the claims administrator for the Settlement. KCC is a nationally recognized notice and claims

the Postcard Notice, KCC will also utilize a proprietary list of banks, brokers, and other nominees ("Nominees") that purchase securities on behalf of beneficial owners. *See In re DVI, Inc. Sec. Litig.*, 2016 WL 1182062, at *8 (E.D. Pa. Mar. 28, 2016) ("In such actions, notice is frequently given first to nominees that hold title to securities in street name, followed by individual notice to beneficial owners who are identifiable through reasonable efforts.").[10] The Postcard Notice will provide important information regarding the Settlement, along with the rights of Class Members in connection therewith, and will direct recipients to the Settlement Website for more information regarding the Action and Settlement, including a downloadable version of the long-form Notice.[11]

In addition to mailed notice, the Summary Notice will be published in *The Wall Street Journal* and transmitted over *PR Newswire*. Copies of the long-form Notice and Claim Form, along with other documents and information relevant to the Action and the Settlement, will be posted and available for download on the Settlement Website.

This manner of providing notice represents "the best notice that is practical under the circumstances" and easily satisfies the requirements of due process, Rule 23, and the PSLRA.

---

administration firm that has successfully administered numerous complex securities class action settlements. *See* KCC Résumé attached as Exhibit 2 to the Nirmul Declaration. *See also* https://www.kccllc.com/. KCC was selected by Class Counsel following a formal bidding process.

[10]     Nominees will be asked to provide email addresses, if available, along with physical mailing addresses for potential Class Members. Although it is not commonplace for Nominees to provide email addresses for purposes of providing notice in securities class actions, if email addresses are provided, KCC will also email notice to those potential Class Members. Class Members will be mailed the long-form Notice and Claim Form upon request.

[11]     Courts routinely allow notice by postcard as proposed here. *See, e.g.*, *Horsehead Holding*, No. 16-cv-292-LPS-CJB (D. Del. Feb. 3, 2021), D.I. 187 at 4  (approving notice though mailing of postcard notice, posting of long-form notice and claim form on website, and publishing a summary notice); *In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR (C.D. Cal Apr. 27, 2020), D.I. 375 at 3-4 (same); Order, *SEB Inv. Mgmt. AB v. Endo Int'l PLC, et al.*, No. 2:17-CV-3711-TJS (E.D. Pa. Sept. 10, 2019), D.I. 89 at 5 (same); Order, *In re Banco Bradesco S.A. Sec. Litig.*, No. 1:16-cv-04155 (GHW) (S.D.N.Y. July 24, 2019), D.I. 197 at 5 (same); William B. Rubenstein, *Newberg on Class Actions* § 8:28 (5th ed. 2019) ("[N]umerous courts have held that postcard notice is 'more than sufficient.'") (collecting cases).

Courts routinely approve comparable notice procedures. *See, e.g., Good v. Nationwide Credit, Inc.*, 314 F.R.D. 141, 155-56, 163-64 (E.D. Pa. 2016) (finding similar notice program, including mailing of postcard to all class members who could be identified with reasonable effort, publication of summary notice, and dedicated website satisfied requirements of Rule 23 and due process).

The form of notice also merits approval. Collectively, the proposed notices advise of, *inter alia*: (i) the nature of the Action; (ii) the definition of the Court-certified Class; (iii) the Class's claims, issues, or defenses; (iv) the Settlement's terms; (v) the consideration that caused Class Representative and Class Counsel to conclude the Settlement is fair, reasonable, and adequate; (vi) Class Members' right to request exclusion from the Class or object to the Settlement and the procedures doing so; (vii) the procedures for entering an appearance; (viii) Class Members' right to participate in the Settlement and the procedures for submitting a Claim; (ix) the binding effect of a class judgment; (x) the proposed plan for allocating the Settlement proceeds; (xi) the date, time, and place of the Settlement Hearing, as well as the possibility that it may be conducted by video or telephonically; and (xii) how to obtain additional information regarding the Settlement. The notices also provide contact information for counsel, as well as the postal address for the Court. The proposed notices also collectively include the information required by the PSLRA.[12]

---

[12]    Specifically with respect to cases filed under the PSLRA, notices of settlements must also state: (i) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;" (ii) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this [title], a statement from each settling party concerning the issue or issues on which the parties disagree;" (iii) "a statement indicating which parties or counsel intend to make [] an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" (iv) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members . . .;" and (v) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. § 78u-4(a)(7).

19

Further, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Here, the Notice specifically advises Class Members that Class Counsel will apply to the Court for an award of attorneys' fees not to exceed 25% of the Settlement Fund plus Litigation Expenses in an amount not to exceed $2.4 million to be paid from the Settlement Fund.

Accordingly, Class Representative respectfully submits that the proposed notice program is adequate and should be approved by the Court. *See Horsehead Holding*, 2021 WL 2309689, at *2 (approving similar notice program).

## V.   PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval, the Court must also set dates for certain future events. The Parties propose the following schedule:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing Postcard Notices to potential Class Members and the full Notice and Claim Form to Nominees (PAO, ¶ 4(b)) | No later than 20 business days after entry of the PAO ("Notice Date") |
| Deadline for publishing the Summary Notice (PAO, ¶ 14(d)) | No later than 10 calendar days after the Notice Date |
| Deadline for filing of papers in support of the Settlement, Plan of Allocation, and fee and expense request (PAO, ¶ 24) | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of requests for exclusion or objections (PAO, ¶¶ 11, 14) | 21 calendar days before the Settlement Hearing |
| Deadline for filing reply papers (PAO, ¶ 24) | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing (PAO, ¶ 2) | 120 calendar days after entry of the PAO, or at the Court's earliest convenience thereafter |
| Postmark deadline for submitting Claim Forms (PAO, ¶ 8) | 120 calendar days after the Notice Date |

## VI.   CONCLUSION

For the foregoing reasons, Class Representative respectfully requests that the Court grant its Motion and enter the proposed Preliminary Approval Order submitted herewith.

Date:  December 23, 2021

Respectfully submitted,

*/s/ Sharan Nirmul*      
Sharan Nirmul (#4589)
Jamie M. McCall
Jonathan F. Neumann
Austin W. Manning
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706
snirmul@ktmc.com
jmccall@ktmc.com
jneumann@ktmc.com
amanning@ktmc.com

-and-

Stacey M. Kaplan
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
One Sansome Street, Suite 1850
San Francisco, California 94104
(415) 400-3000
skaplan@ktmc.com

*Class Counsel for Class Representative the*
*Public Employees' Retirement System of*
*Mississippi and the Class*

Blake A. Tyler
**GADOW TYLER, PLLC**
511 E. Pearl Street
Jackson, Mississippi 39201
(601) 355-0654
blake@gadowtyler.com

*Additional Counsel for Class Representative*
*the Public Employees' Retirement System of*
*Mississippi*

*/s/ P. Bradford deLeeuw*     
P. Bradford deLeeuw (#3569)
**DELEEUW LAW LLC**
1301 Walnut Green Road
Wilmington, Delaware 19807
(302) 274-2180
brad@deleeuwlaw.com

*Liaison Counsel for the Class*

21